**GENERAL ELECTRIC COMPANY, AEROSPACE GROUP, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 25–89C.**

United States Claims Court.

July 19, 1990.

Roger N. Boyd, Washington, D.C., for plaintiff.

Ruth A. Harvey, with whom were Asst. Atty. Gen. Stuart M. Gerson, David M. Cohen, and John W. Showalter, Washington, D.C. (Bryan O'Boyle and Paul Mitchell, Dept. of the Air Force, of counsel), for defendant.

## OPINION

BRUGGINK, Judge.

The pending cross-motions for summary judgment raise the question of whether there is a conflict between a Defense Acquisition Regulation provision dealing with foreign selling costs and a Cost Accounting Standard describing allocation of costs. The matter has been fully briefed and orally argued. For the reasons expressed herein, the court concludes that there is no conflict between the two provisions, and that defendant's motion is due to be granted.

### I. FACTUAL BACKGROUND [1]

This is an action brought under the Contracts Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1988). The case arises out of written contracts entered into between plaintiff, General Electric Company, Aerospace Group ("GE"), and the United States, acting through the Air Force. The dispute concerns GE's inclusion of foreign selling costs ("FSC") as general and administrative expenses ("G & A") in its Final Indirect Cost Rate Proposals for fiscal years 1982 and 1984.[2] Defendant contends that the cost proposals are inconsistent with the Defense Acquisition Regulation ("DAR"), 32 C.F.R. Parts 1–39 (1982), and Cost Accounting Standards ("CAS"), 4 C.F.R. Chap. III, §§ 405 and 410.

Plaintiff and defendant entered into contracts numbered F33615–82–C–3223, F33615–81–C–5117, F33615–79–C–5147, and other flexibly priced contracts.[3] The contracts have cost reimbursement or incentive payment provisions under which costs are determined by rules of allocability and allowability. Both contracts make a reference to DAR § 7–104.83, which requires plaintiff to "Comply with all Cost Account-

---

1. The facts are drawn from the complaint and the parties' submissions on the motion.

2. FSC are, according to DAR § 15–205.37(b), costs incurred in connection with Foreign Military Sales (as defined by the Arms Export Control Act), or foreign sales of military products. There is no dispute whether the costs involved in this case were FSC.

 The CAS defines G & A as follows:

 (6) Any management, financial, and other expense which is incurred by or allocated to a business unit and which is for the general management and administration of the business unit as a whole....

3. Flexibly priced contracts are those in which the final price of the contract is determined by the costs incurred by the contractor.

ing Standards in effect on the date ... of this contract" and also "comply with any Cost Accounting Standard which hereafter becomes applicable to the contract or subcontract of the Contractor." This section also requires plaintiff to submit a Disclosure Statement describing its cost accounting practices to the Cost Accounting Standards Board ("CASB").

The CAS is a published document that states the current views of the CASB concerning allocability of costs. The CAS is not intended to address the allowability of costs, and asserts that the latter is a procurement concept, and therefore generally determined by procurement regulations. CAS Board Restatement of Objectives, Policies and Concepts (May 1977) at 1. The Board further explains that allocability, on the contrary, is an accounting concept that results from the relationship between a cost and a cost objective. *Id.* at 2.

In accordance with the Defense Production Act of 1950 Amendments, 50 U.S.C. App. § 2168 (1988), the CASB promulgated CAS 410, Allocation of Business Unit General and Administrative Expenses to Final Cost Objectives, on October 1, 1976. Section 410 became applicable to plaintiff on January 1, 1978, and remained in effect throughout the period relevant to this case. This section provided criteria to determine the allocation of business unit[4] G & A expenses to business unit final cost objectives based on their beneficial or causal relationship. CAS 410.20.

Section 410 provides, in relevant part, that a "Fundamental Requirement" is that "business unit G & A expenses shall be grouped in a separate indirect cost pool which shall be allocated only to final cost objectives." Plaintiff has placed selling costs, including FSC, in its G & A pool since 1972.

As DAR § 7–104.83 requires, plaintiff submitted to the Government a Disclosure Statement setting out its cost accounting practices. The statement was effective as of January 1, 1978. In it, GE explained

that selling costs were included in the G & A expense pool, and that they were allocated to final cost objectives. The Air Force declared the disclosure statement to be "adequate" by letter dated January 19, 1979.

The contracts in issue also incorporate by reference either § 7–203.4 or § 7–108.1 of DAR. Under these provisions, the Government is required to pay a contractor incurred costs that are allowable and in accordance with Part 2 of DAR § 15. Section 15–204 of the DAR provides that "Costs shall be allowed to the extent that they are reasonable (see 15–201.3), allocable (see 15–201.4), and determined to be allowable in view of the other factors set forth in 15–201.2 and 15–205." Section 15–201.2 lists four factors affecting allowability of costs:

(i) reasonableness, (ii) allocability, (iii) standards promulgated by the Cost Accounting Standards Board, if applicable, otherwise generally accepted accounting principles and practices appropriate to the particular circumstances, and (iv) any limitations or exclusions set forth in this Part 2, or otherwise included in the contract as to types or amounts of cost items....

Section 15–205.37(b) addresses selling costs, and was applicable to the contract at issue. It provides the following:

(b) Selling costs are allowable to the extent they are reasonable and are allocable to the Government business.... Allocability of selling costs will be determined in the light of reasonable benefit to the U.S. Government arising from such activities as technical, consulting, demonstration, and other services which are for purposes such as application or adaptation of the contractor's products to U.S. Government use for its own requirements. *Selling costs incurred in connection with potential and actual Foreign Military Sales as defined by the Arms Export Contract Act, or foreign sales of military products shall not be*

---

**4.** The CAS defines business unit as "any segment of an organization, or an entire business organization which is not divided into segments."

*allocable to U.S. Government contracts for U.S. Government requirements.*
(Emphasis added.) The last sentence of this section was added in March, 1979. Before this date, the DAR did not place such a restriction on FSC allocation to U.S. Government contracts, as long as costs benefitted the Government.

*1982 Inclusion of FSC*

On March 31, 1983, GE submitted a final indirect cost rate proposal to the Air Force and the Defense Contract Audit Agency ("DCAA") with respect to an operating division, Space Systems Division ("GE/SSD"), for fiscal year 1982. In this proposal, plaintiff included FSC in the G & A expense pool. On October 4, 1985, GE submitted a final indirect cost proposal to the Air Force and the DCAA for its "home office," the GE Aerospace Group, and again included FSC in its G & A pool.

The DCAA sent out a DCAA Form 1 Notice of Contract Costs Suspended and/or Disapproved ("Form 1 Notice") on June 23, 1987. This notice informed plaintiff that the DCAA disapproved payment for the FSC included in the G & A expense pool by GE/SSD in the 1982 final indirect cost rate proposal. The DCAA asserted that $445,849 of the $524,528 in selling costs related to FSC were unallowable costs. Moreover, the form also stated that plaintiff had improperly received payments towards this $445,849.

On July 24, 1987, GE/SSD responded to the DCAA Form 1 Notice and explained that CAS 410 and GE/SSD's disclosure statement required such an allocation despite the prohibition of DAR § 15–205.37(b). Nevertheless, the Air Force began to withhold payments due under the invoices based on the DCAA Form 1 Notice.

On October 13, 1987, GE/SSD submitted a second letter to the Air Force, demanding the release of the money withheld. The Air Force responded by requesting GE/SSD to certify a claim concerning the money withheld, which it did.

The Contracting Officer issued a final decision on August 8, 1988 denying the claim. The decision specifically stated that DAR § 15–207.37(b) is effectively a cost allowability rule which "prescribes no affirmative rule on how foreign military selling costs are to be allocated ..." As a result, the Contracting Officer demanded return of $445,849, and asserted that the Government would continue to withhold $61,819 then due. The balance owed to the Air Force would be $384,030.

*1984 Inclusion of FSC*

The DCAA issued another Form 1 Notice on December 7, 1987, regarding the GE Aerospace Group proposal for fiscal year 1984. The form identified $81,403 of the $170,839 of the selling costs related to foreign military sales as being unallowable costs. On November 28, 1988, the Contracting Officer issued a final decision denying plaintiff's claim for return of $81,403 withheld, on the ground that the contested selling costs were not allowable.[5]

The Air Force has continued to withhold the money referred to in the August 8 and November 28 final decisions. On January 17, 1989, plaintiff filed the present action, seeking return of monies withheld and disputing the Government's claim to additional monies. The defendant has counterclaimed. The legal issues are identical with respect to the two decisions of the Contracting Officer. There are no material facts in dispute, and the case is appropriate for summary disposition.

## II. DISCUSSION

 Plaintiff correctly contends that where there is a conflict between the CAS and DAR on an issue of allocability, allocation under CAS controls.[6] Whether there

---

5. The complaint originally sought return of the entire $81,403. The parties have stipulated, however, that $12,000 is non-reimbursable. The amount plaintiff thus seeks is $69,403.

6. The CASB has the authority to "make, promulgate, amend and rescind cost accounting stan-

dards and interpretations thereof designed to achieve uniformity and consistency in the cost accounting standards governing measurement, assignment and *allocation* of costs to contracts with the United States." 41 U.S.C. § 422 (1988) (emphasis added). The standards promulgated

is in fact a conflict between the two provisions is considerably less clear, however. It is plain that DAR § 15–205.37(b), which provides the support for defendant's disallowance, purports on its face to address questions of allocability: "Selling costs incurred in connection with [foreign military sales] ... shall not be allocable to U.S. Government contracts...." After considering the parties' arguments, however, the court is persuaded that DAR § 15–205.37 is a provision dealing with allowability, not allocability. Accordingly, there is no conflict between the provisions, and the defendant is free to apply the DAR as an allowability prohibition.

### CAS 410

Plaintiff asserts that CAS 410 expressly sanctions "the inclusion of selling costs, both domestic and foreign in the G & A cost pool." Plaintiff's Brief of February 13, 1990 at 5. In support of this contention, plaintiff explains that the CASB provides an illustration concerning the allocation of selling costs, and fails to distinguish between foreign and domestic selling costs. CAS 410.60(c)(2) provides the following example:

> Business Unit C has included selling costs as part of its G & A expense pool. Business Unit C wishes to continue to include selling costs in it G & A expense pool. Under the provisions of this Standard, Business Unit C may continue to include selling costs in its G & A pool, and these costs will be allocated over a cost input base selected in accordance with the provisions of [CAS] 410.50(d).

Plaintiff concludes that this illustration alone resolves any uncertainty about whether GE's inclusion of selling costs, both foreign and domestic, in the G & A expense pool and allocation of those costs to the contracts was proper.

CAS 410 is considerably more general than plaintiff asserts, however, and there is no indication that this section was intended to precisely sanction the inclusion of FSC in the G & A expense pool. As defendant correctly points out, CAS 410 simply permits, but does not mandate, the inclusion of selling costs in the G & A expense pool.

More importantly, however, even if inclusion of FSC in the G & A expense pool is consistent with CAS 410, which the court has no reason to doubt, that by no means creates a dispute with a provision genuinely addressing allowability. Costs can plainly be properly allocable, yet not allowable. Even if costs are not allowable, they must be allocated. It is not surprising, therefore, that CAS 410 does not specifically address FSC. Allocation addresses factual issues of beneficial and causal relationship between expenses and cost objectives. *See* CAS 410.20. Even if an expense is not allowable, those relationships can be evaluated. Since CAS 410 does not purport to *allow* FSC, the real issue is whether DAR § 15–205.37(b), which precludes Government payment for such costs, is an attempt to preclude allocation, or is in fact a statement of allowance policy. If it is the former, it is improper; if it is the latter, it can be enforced.

### DAR § 15–205.37(b)

Plaintiff contends that DAR § 15–205.37(b) is inconsistent with the CAS because it purports to address allocability rather than allowability. Since the CAS exclusively governs allocability, the conflicting DAR provision, according to plaintiff, is invalid. Plaintiff cites *United States v. The Boeing Company*, 802 F.2d 1390 (Fed.Cir.1986), as the controlling case. *Boeing* involved a DAR provision that made the company's Supplemental Executive Retirement Plan costs allowable only if they were allocated in a specific manner. The manner required under the DAR, however, was inconsistent with CAS provisions. The Federal Circuit found that despite the DAR's use of the word "allowable," the provision was, in effect, an allocation requirement that conflicted with the relevant CAS provisions:

> The DAR [in question] is not a provision which makes costs allowable or unallowable *per se* based upon a rational procurement policy entirely divorced from

"shall be mandatory for use by all executive agencies and by contractors." *Id.*

cost principles. Rather, the DAR makes the allowability of a cost *contingent* upon the use of a cost measurement, allocation and assignment technique which conflicts with the requirements of CAS 412 and 413. Under the DAR, Boeing's SERP costs are only *allowable* if assigned to a period other than the period to which CAS 412 and 413 require they be assigned. Therefore, we hold that the DAR is in fact an allocability provision which conflicts with CAS 412, also an allocability provision.

*Boeing,* 802 F.2d at 1394. (Emphasis in original.) Plaintiff concludes that the conflict in the present case is even more obvious than in *Boeing,* because the DAR provision at issue specifically uses the word "allocable," not "allowable." That construction of *Boeing* is superficial, however. The Federal Circuit looked beyond the language of the DAR provision, and examined the actual effect or intent of the words used. The words themselves were not controlling. It is necessary to examine the DAR provision in the present case in the same manner.

DAR § 15–205.37(b) begins with a general statement regarding allowability of selling costs. It states they are *"allowable* to the extent they are reasonable and are allocable to Government business." The next sentence then describes factors relevant to allocation, based upon "reasonable benefit" to the Government. Benefit to the Government is an appropriate consideration in making allocation determinations, and plaintiff does not suggest this creates a conflict with the CAS. It is the last sentence specifically forbidding "allocation" of FSC that creates the potential clash.

The Armed Services Board of Contract Appeals addressed the confusion surrounding CAS 410 and DAR § 15–205.37(b) in *Emerson Electric Co.,* ASBCA No. 30090, 87–1 BCA ¶ 19,948. In its opinion, the

Board provides an extensive discussion of the development of the section.[7] Without repeating that discussion, it is useful to focus on the choice of the term "allocation." The original draft of the proposed addition to DAR § 15–205.37(b) utilized the term "unallowable." *Id.* at 98,418. The drafters[8] subsequently shifted to the phrase "not recoverable," a phrase which the court views as more compatible with notions of allowability *vel non.* A final draft was prepared by a subcommittee working group, however, which substituted the term "allocable" for "recoverable," to convey the intent that "these costs are not allocable and therefore cannot be recoverable against the United States." *Id.* at 98,-419. In its earliest versions, therefore, the proposed change purported to deal with allowability.

The plaintiff provides the court with numerous documents to show that, after the change was adopted, a conflict between the two regulations was generally recognized by industry, professional accountants, and the Department of Defense. GE points, for example, to a set of briefing charts prepared by the Department of Defense concerning the alleged conflict between the DAR and CAS provisions at issue. In the court's view, however, these materials, as well as other factors, demonstrate that the provision in question was intended, and did in fact, operate as an allowance prohibition only. A September 17, 1984 briefing paper, for example, compares the "position against allowability" and the "position for allowability." While it also refers to the prohibition as an issue of allocation, it recommends basing a resolution on the "current Administration's foreign policy."

The court also finds instructive the explanation given for the initial change of the regulation in 1979: "Carter's presidential decision in 1979 to discourage sales to foreign governments resulted in a change to

---

**7.** The Board reached the conclusion that the CAS and DAR do not conflict. That decision was reached on a summary judgment motion filed by the contractor. The Board found for the defendant, in part, based upon resolution of certain issues against the contractor as the moving party.

**8.** Changes were being considered by the Armed Services Procurement Regulations Committee, predecessor to the Defense Acquisition Council.

DOD regulations to prohibit allocating foreign selling costs to DOD contracts." The next line explains how this policy has since changed: "Reagan decision in 1981 encouraged armaments cooperation with allies, but DOD regulations have not been revised to accommodate the Reagan foreign policy."

Of similar import is the Action Memorandum prepared for the Secretary of Defense. The purpose of the memorandum "is to provide the background of the current controversy involving the *allowability* of foreign selling costs...." (Emphasis added.) The memorandum goes on to explain a cost effectiveness study done on the subject, and discusses the various policy reasons behind the FSC controversy. As defendant contends, this document stresses the policy motivations behind the FSC controversy, and interprets DAR § 15–205.37(b) to be a reimbursement policy, rather than an allocation standard. Nowhere does it conclude that the DAR and CAS conflict, and in fact refers to this as a "perceived" conflict.

Whether or not a causal link can be established between an expense and a cost objective is plainly not a matter of foreign policy. It makes perfect sense, however, to dictate matters of allowability through policy determinations. To paraphrase the *Boeing* decision, the DAR provision *is* a provision which makes costs allowable or unallowable *per se* based upon a rational procurement policy entirely divorced from cost principles. *See Boeing*, 802 F.2d at 1394.

Plaintiff also relies on affidavits by accounting experts as evidence that there is a recognized conflict between the DAR and CAS in the accounting field. Initially, the court observes that, although these statements may be instructive, the "interpretation of regulations which are incorporated into government contracts is a question of law" which this court must decide. *Boeing*, 802 F.2d at 1393. More to the point, however, only two affidavits, those of Louis Rosen and Frank Alston, assert the existence of a conflict. Both gentlemen take at face value, however, the use of the term "allocable" in the DAR provision.

While that may be understandable, it does not get to the heart of whether there is a conflict. The analysis of the accountants is illuminating, however. Mr. Alston states, and the court fully agrees, that the "relationship on which allocability hinges cannot be decreed by statute or regulation.... The fact that the selling expenses were directed to potential customers residing beyond our national borders simply does not automatically negate that causal or beneficial relationship."

What these statements illustrate is that the DAR provision in question could not have been intended to, nor did it have, the effect of determining allocation. Perhaps most persuasive on that point is an affidavit furnished by defendant from James Conlin, the Contracting Officer. He recites that, in evaluating the 1982 and 1984 reimbursement claims, he recognized that he could have interpreted DAR § 15–205.37 as an allocation provision. He did not, however. The disagreements between the parties concerning cost reimbursement for those years is not the result of his application of the DAR as an allocation provision. Rejection of FSC as improperly allocated to Government contracts would have required reallocation of those costs somewhere else. That did not occur. If it had, FSC would have been taken out of the G & A pool, treated as direct costs, and a portion of G & A assigned to those direct costs could have been treated as non-reimbursable as well. DAR § 15–205.37(b) was applied, therefore, as if it was an allowance prohibition *after* FSC had been allocated to Government contracts.

During oral argument, counsel for GE conceded that plaintiff's position is exclusively premised on a literal application of the term "allocation." This is understandable because there can be no other source of confusion about the meaning of the DAR provision. There is nothing about the way in which the DAR provision was applied in this case which was different than if the term "allowable" had been used. This strongly suggests that the provision, in both intent and effect, was not one that addressed allocability.

Finally, the court notes that its interpretation of the DAR provision is supported by subsequent clarification. In 1985, Congress specifically disallowed reimbursement of FSC with fiscal year 1985 appropriations. In addition, the successor Federal Acquisition Regulation was revised in January 1986 to substitute the words "are unallowable" for "not allocable." FAR § 31.205–38(b). The court declines to view these administrative and legislative actions as proof that a change was necessary to accomplish defendant's interpretation. The mere fact that a revision occurred is not an admission that a conflict did exist. It is equally agreeable with the view that confusion existed which had to be cleared up. The revised FAR only differed from the DAR by one word. This leads the court to conclude that the 1979 provision was adopted to deal with allowability, not allocability.

### III. CONCLUSION

Defendant's motion for summary judgment is granted. Plaintiff's motion for summary judgment is denied. The court recognizes, however, that the phrasing of the DAR provision was misleading, and caused confusion. While defendant has asked for interest on its counterclaim recovery, the court declines to award it.[9] The Clerk is directed to enter judgment for defendant in the amount of $384,030 and thereafter dismiss the complaint. No costs.

---

9. Defendant cites no statutory or contractual provision mandating recovery of interest and the court is not aware of any. Under those circumstances, award of interest to the Government is discretionary. *See Royal Indemnity Co. v. United States,* 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361 (1941). The court will not exercise its discretion to award interest here because the delay in recovery is largely the fault of poor draftsmanship by the Government.