**GENERAL ELECTRIC COMPANY, AEROSPACE GROUP,**
Plaintiff-Appellant,

v.

**The UNITED STATES,**
Defendant-Appellee.

No. 90-5157.

United States Court of Appeals, Federal Circuit.

March 29, 1991.

Rehearing Denied April 30, 1991.

Suggestion for Rehearing In Banc Declined May 14, 1991.

Roger N. Boyd, Crowell & Moring, Washington, D.C., argued for plaintiff-appellant. With him on the brief was J. Eric André.

Ruth A. Harvey, Trial Atty., Dept. of Justice, Washington, D.C., argued for defendant-appellee. With her on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director, John A. Showalter, Asst. Director and J. Christopher Kohn. Also on the brief was Major Scott Bagley, Dept. of the Air Force, of counsel.

Before LOURIE, CLEVENGER and RADER, Circuit Judges.

CLEVENGER, Circuit Judge.

General Electric Co., Aerospace Group ("GE"), appeals the summary judgment of the United States Claims Court which disallowed GE's claim against the United States for costs associated with its allocation of foreign selling costs ("FSC") to its General and Administrative Expenses account. *General Electric Co., Aerospace Group v. United States*, 21 Cl.Ct. 72 (1990) ("*Aerospace*"). The Claims Court held that a sentence added to a section of the Defense Acquisition Regulations ("D.A.R."), codified at 32 C.F.R. § 15.205.37(b) (1984), in March 1979, which stated that military equipment-related FSC "shall not be allocable to U.S. Government contracts," did not conflict with a Cost Accounting Standard ("C.A.S."), codified at 4 C.F.R. § 410.60 (1984), and that the D.A.R. effectively prohibited inclusion of such FSC as an expense chargeable to a U.S. Government contract. We affirm.

I

GE's argument, both here and in the Claims Court, is premised on the assertion that the choice of the term "allocable" in D.A.R. § 15.205.37(b) by the Department of Defense ("DOD") was purposeful, that the DOD first used "allowable," or "recoverable," but dropped those terms intentionally, and that the DOD is not permitted, under its statutory authority, to amend allocation determinations promulgated by the Cost Accounting Standards Board ("CASB") and made applicable to all federal procurement. 4 C.F.R. § 331.30(c) (1984). Therefore, according to GE, the purported allocation regulation promulgated by DOD is invalid.

The Claims Court agreed with the premise that promulgated allocation determinations made by the CASB cannot be overruled by regulations in the D.A.R. and "allocation under CAS controls." *Aerospace*, 21 Cl.Ct. at 75 (footnote omitted). However, the Claims Court stated that its inquiry did not end there, because this court has instructed it to look "beyond the language of the DAR provision, and examine[ ] the actual effect or intent of the words used." *Id.* at 77 (citing *United States v. Boeing Co.*, 802 F.2d 1390, 1394 (Fed.Cir.1986)). The Claims Court held that the term "allocable" was not in fact a conflicting allocation, beyond DOD powers, but an "allowability" determination as to which the DOD had exclusive authority. In *Boeing*, we asked a similar question, holding "that the DAR [regulation in question] is in fact an allocability provision which conflicts with CAS 412 also an allocability provision," *id.*, and finding the D.A.R. invalid although the language used expressly referred to whether a cost was "allowable." *See* 32 C.F.R. § 15–205.6(f)(2)(ii)(B) (1982). We have thus sanctioned an inquiry into the true nature of the regulation rather than merely examining an isolated word out of context, which may have been chosen improvidently by DOD.

II

Neither party disputes that both the D.A.R. provision in question and the alleg-

edly conflicting C.A.S. regulation were incorporated into GE's flexibly-priced contract with the Government. The question before us, then, is whether, as properly construed, the instant D.A.R. section is in conflict with the cited C.A.S. regulation in which case the D.A.R. section would be invalid under *Boeing.* However, we are mindful of the canon of statutory construction, equally applicable to regulations, "that, where the text permits, statutes dealing with similar subjects should be interpreted harmoniously," *Jett v. Dallas Indep. School Dist.*, 491 U.S. 701, 739, 109 S.Ct. 2702, 2724, 105 L.Ed.2d 598 (1989) (Scalia, J., concurring) and "[w]hen there are two acts upon the same subject, the rule is to give effect to both if possible." *United States v. Borden Co.*, 308 U.S. 188, 198, 60 S.Ct. 182, 188, 84 L.Ed. 181 (1939). The D.A.R., in pertinent part, reads:

> (b) Selling costs are allowable to the extent they are reasonable and are allocable to Government business.... Allocability of selling costs will be determined in the light of reasonable benefit to the U.S. Government arising from such activities as technical, consulting, demonstration, and other services which are for purposes such as application or adaptation of the contractor's products to U.S. Government use for its own requirements. *Selling costs incurred in connection with potential and actual Foreign Military Sales as defined by the Arms Export Control Act, or foreign sales of military products shall not be allocable to U.S. Government contracts for U.S. Government requirements.*

D.A.R. § 15–205.37 (1984); 32 C.F.R. § 15–205.37 (1984) (Emphasis added).

The final emphasized sentence was effective during the fiscal years 1982 and 1984, which this dispute involves. Under the now-unified Federal Acquisition Regulations, which have replaced the D.A.R., foreign selling costs are again permitted, effective beginning fiscal year 1986.

### III

We adopt the Claims Court's conclusion that the D.A.R. section in question is in fact an allowability provision based upon the court's thorough and convincing discussion of the evidence on the development of the provision as clearly related to threshold allowability of FSC, its origin in President Carter's decision to discourage foreign sales of military equipment, and its categorical prohibition of the inclusion of *any* FSC related to military product exportation, which is inconsistent with a purported allocation determination. *See* D.A.R. § 15–109(d) (1984) (defining "Allocate" as "[t]o assign an item of cost ... to one or more cost objectives."). In other words, the statement that a cost can *never* "be allocable" is the lexicographic twin of making it unallowable. At oral argument, GE's counsel responded to this observation by indicating that the system requires that costs are first to be allocated, and then a decision is made as to whether the cost is to be allowed. Under this scenario, the D.A.R. provision impermissibly disrupts the accounting sequence and provides no locus for the cost to rest prior to its elimination—a cost *must* "be allocated" before it can be disallowed. *See also* Affidavit of Frank M. Alston, former contract auditor with DOD, at ¶ 6(c) ("allocability determinations are made totally and exclusively on whether a causal or beneficial relationship exists" and a declaration of non-allocability "is totally inconsistent with the process of determining the cost of performing defense contracts.") We are not persuaded that the priority of C.A.S. allocation determinations requires that a cost be technically "allocated" before it is completely eliminated from any and all accounts relevant to the particular U.S. Government contract. Nothing in the D.A.R. precludes GE from allocating the FSC under the C.A.S. for any purpose other than billing the Government for recovery of funds on this flexibly-priced contract.

Furthermore, the Claims Court noted that the opening sentence of the provision expressly states its applicability to the allowability of selling costs. Indeed, the entirety of Title 32, Section 15, of which § 15.205.37(b) is a part, relates to "allowance of costs." 32 C.F.R. § 15–000 (1984).

The Claims Court also noted that the Armed Services Board of Contract Appeals, confronted with the same issue reached the same conclusion, which, while binding neither on us nor the Claims Court, is not unprobative of the construction that should be given to the provision. *Emerson Electric Co.*, 87–1 BCA (CCH) ¶ 19,478 (ASBCA 1986). Finally, the Claims Court noted that, when the unfortunate use of the neologism "allocable" was brought to the attention of DOD by the industry and professional accountants, the DOD promptly prepared "briefing charts" correcting any misapprehension, pending the removal of the FSC prohibition under a policy change initiated by President Reagan. Plaintiff's Proposed Findings of Uncontroverted Fact ¶ 24.

We agree that, when properly interpreted, the D.A.R. prohibition against allowing any allocation of military equipment FSC, no matter how allocated, does not conflict with the C.A.S. The C.A.S. merely requires that FSC be allocated to General and Administrative Expenses, if, and when, such costs are allowable. The C.A.S., during the period in question, continued to be effective with regard to any FSC not governed by the DOD regulation, since the C.A.S. is applicable to all Government contracts, not only those concerning military equipment. The C.A.S. in question also provides guidelines as to when a particular FSC can be allocated to a Government contract based upon the existence of a "beneficial or causal relationship" between the FSC and the Government contract. 4 C.F.R. § 410.20 (1984). Therefore, we agree that the C.A.S. does not conflict with the instant D.A.R. nor does the DOD regulation render the C.A.S. regulation a nullity.

In sum, as conceded by GE, its argument is based upon its contention that the literal meaning of the isolated word, "allocable," divorced from its context, governs over the proper construction of the term's effect which is based upon the standard rules of construction looking to purpose, historical development, the interpretation given by DOD and the industry concerned, and the context amid the statute and regulations, with a preference given to finding a reasonable interpretation that does not create unnecessary conflict. We have previously rejected a narrow approach to the construction of terms in the D.A.R. in *Boeing*, under which GE's argument is necessarily unavailing.

Finally, GE contends, against strenuous objection from the Government that GE waived this argument by not raising it below, that if we find that C.A.S. § 410 does not govern allocation of its FSC, then GE should now be allowed to allocate FSC into a different category under C.A.S. § 418. Since 32 C.F.R. § 15.205.37(b) (1984) forbade FSC allowability during the years in question, we fail to see why we should address where GE should allocate its FSC.

AFFIRMED.