**FOLEY COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 96–340C.

United States Court of Federal Claims.

Nov. 20, 1996.

Seth R. Price, Atlanta, GA, for plaintiff.

Harold D. Lester, Jr., Department of Justice, with whom were Frank W. Hunger, Assistant Attorney General, and David M. Cohen, Director, all of Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This contract dispute is presently before the court on the Government's motion to dismiss the plaintiff's complaint under RCFC 12(b)(4) for failure to state a claim upon which relief can be granted. Oral argument was held November 8, 1996. For the reasons stated herein, the Government's motion to dismiss is granted.

### Background [1]

The plaintiff, Foley Company (Foley), is a general contractor that specializes in me-

---

**1.** For purposes of a motion to dismiss under RCFC 12(b)(4), the court must assume as true all facts alleged in the complaint. For purposes of this motion, the defendant does not dispute the

chanical work. Its principal place of business is in Kansas City, Missouri. In April of 1992, the United States Army Corps of Engineers, Louisville District (the "Corps") issued an Invitation For Bids (IFB) to provide the labor and materials necessary to construct a sewage treatment facility (the "project") at Fort Knox, Kentucky. Foley was one of several bidders on the project, and, in preparing its bid, encountered a question regarding the state sales tax status of the project. The IFB provided that the "contract price includes all applicable Federal, State, and Local taxes and duties," but made no reference as to the taxable status of the project for purposes of those taxes.

Specifically, Foley questioned whether the project would be exempt from taxation by the Commonwealth of Kentucky. Rather than make an inquiry to the Kentucky Revenue Department to obtain the answer to this question, Foley instructed one of its secretaries to contact the Corps regarding the tax status of the project. This Foley secretary, Joan Anderson, called a telephone number that was listed in the IFB as the number for Kim McKnight, which could be called for "Procurement of Plans & Specifications," or for a "Prospective Bidder's List." [2] According to Ms. Anderson, on May 13, 1992 she spoke, not with Kim McKnight, but with a Corps employee named "Cynthia" and was told that the project was exempt from state taxation in Kentucky. She was allegedly further informed that the Corps' projects were exempt in both Kentucky and Michigan, but not in the states of Ohio, Indiana, and Illinois. As it turned out, however, this information was erroneous. In fact, the Corps' projects were tax exempt in Ohio, Indiana, and Illinois, but not exempt in Michigan or Kentucky.

After the state tax-status inquiry was made by Ms. Anderson and reported to the estimating department at Foley, it submitted a bid to the Corps that excluded any sum for Kentucky sales taxes. On or about July 15, 1992, the Corps awarded Contract No. DACA27–92–C–0109, in the amount of $13,190,000.00, to Foley. Soon after being awarded the contract, Foley became concerned that it had not received a "tax exempt certificate" for the project and made an inquiry of the Corps regarding such a certificate. Again, this inquiry was made in the form of a telephone call by Ms. Anderson on July 30, 1992. Ms. Anderson called the same number—for Kim McKnight—that she had called on May 13, 1992, but on this occasion she spoke, not with Ms. McKnight or Cynthia, but with Janet Hendersal. Ms. Hendersal then informed Ms. Anderson that the project was not exempt from state taxes in Kentucky.

Upon the information obtained from Ms. Hendersal, Foley made further inquiries to the Corps seeking its assistance in securing a tax exemption for the project from the Commonwealth of Kentucky Revenue Cabinet. On August 12, 1993, the Corps submitted an "Application For Pollution Control Tax Exempt Certificate" to the Revenue Cabinet. At some point prior to the Revenue Cabinet's decision, the Corps informed Foley that it was likely that the exemption would be issued. However, on October 25, 1993, the Revenue Cabinet denied the exemption based on a technical classification of the project—as one for domestic, rather than industrial, waste treatment. The Corps ultimately agreed with this classification and thus did not appeal the decision.

As a result of the denial of the state tax exemption, Foley was required to pay Commonwealth of Kentucky sales tax in the amount of $290,648.00. On November 14, 1994, Foley requested that the Corps reimburse it for the taxes paid to Kentucky because of the representations made pre-bid by "Cynthia." Foley certified this request on March 1, 1995, asking for a contracting officer's final decision. By a final decision on June 16, 1995, the contracting officer denied Foley's requests for reimbursement. On June 11, 1996, Foley filed its present claim in

---

facts alleged by the plaintiff, which are summarized herein.

**2.** Other telephone numbers were also included in the same section of the IFB. These numbers were for: 1) Stephen P. Hornbaker, "Technical Questions on Plans and Specifications;" 2) Glenda Hitner, "Bid Results;" and 3) Joseph L. Theobald, "Award Information."

this court seeking reformation of the contract under the doctrine of mutual mistake and reimbursement for the amount of state taxes it paid to Kentucky, plus interest.

### Discussion

This court may only grant a motion to dismiss under RCFC 12(b)(4) where it is beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Highland Falls–Fort Montgomery Cent. Sch. Dist. v. United States,* 48 F.3d 1166, 1169–70 (Fed.Cir.1995) (citing *Chang v. United States,* 859 F.2d 893, 894 (Fed.Cir.1988)). For purposes of such a motion, the court considers as true all facts alleged in Foley's complaint, including all attachments to the complaint, and makes "all reasonable inferences in favor of the nonmovant." *Id.* (quoting *Gould, Inc. v. United States,* 935 F.2d 1271, 1274 (Fed.Cir.1991)).

Foley asserts that it is entitled to a reformation of its contract with the Corps because a mutual mistake of fact occurred during the formation of the contract. The alleged mutual mistake was that both Foley and the Corps believed the project to be exempt from state sales taxes in Kentucky. A contract may be reformed under the doctrine of mutual mistake where four elements are satisfied:

> 1) the parties to the contract were mistaken in their belief regarding a fact; 2) that mistaken belief constituted a basic assumption underlying the contract; 3) the mistake had a material effect on the bargain; and 4) the contract did not put the risk of the mistake on the party seeking reformation.

*Dairyland Power Coop. v. United States,* 16 F.3d 1197, 1202 (Fed.Cir.1994) (citing *Atlas Corp. v. United States,* 895 F.2d 745, 750 (Fed.Cir.), *cert. denied,* 498 U.S. 811, 111 S.Ct. 46, 112 L.Ed.2d 22 (1990)).

In its complaint, Foley has alleged facts that, if true, might support a finding that the first three elements of the *Dairyland* test are met.[3] However, Foley's main difficulty lies in the fourth element, where it must prove that its contract with the Corps did not place on it the risk of a mistake regarding the applicability of state sales taxes in Kentucky. Foley concedes that the IFB places the burden of determining the applicability of the taxes on the contractor, but asserts that it reasonably satisfied this burden by seeking the advice of the Corps prior to making its bid, and thus reasonably relied on the Corps' alleged assertions of tax exemption for the project.

In essence, what Foley seeks to do is shift its burden of determining the applicability of the state taxes back to the Corps.[4] For Foley to succeed, it has to argue that the IFB was, in effect, orally altered prior to the bid. This new proposed contract would, therefore, be unique to the plaintiff. Other bidders would not have had the benefit of the same alteration. There are a number of problems with this argument.

The first problem arises from Cynthia's lack of authority to alter the terms of the IFB and the resulting contract. Foley has not even alleged that Cynthia had actual authority or implied actual authority to bind the Corps to what would amount to a pre-bid modification of the IFB. There is no allegation that Cynthia was the contracting officer or that she was specifically designated by the Corps to represent it in the solicitation of

---

3. In light of this court's determination that, as a matter of law, Foley cannot prove the fourth element of the *Dairyland* test, there is no need to address these other elements.

4. At oral argument, Foley's counsel, though conceding that the burden was on Foley to determine the applicable taxes, asserted that the specific language of the IFB also worked to place some level of burden upon the Government for determining the applicability of the taxes. The IFB clause relied on by Foley states, "The Government shall, without liability, furnish evidence appropriate to establish exemption from any

Federal, State, or Local tax when the Contractor requests such evidence and a reasonable basis exists to sustain the exemption." However, this clause cannot be read as placing a burden on the Government to make a binding representation regarding the likelihood, in its opinion, of state taxation. The state taxability of a project is ultimately a state determination—thus, the limiting language in the clause, "without liability." The clause merely obligates the Government to cooperate with the contractor in attempting to complete the necessary paperwork.

bids for the sewage treatment project or to answer any questions regarding any aspect of the project. As Foley's counsel conceded during oral argument, Foley was aware that Mark Yates was the contracting officer for the project and that neither the IFB nor the resulting contract make any reference to a person named Cynthia.

■ It is well established that a contractor has the duty to ensure that those Government employees upon whom the contractor relies have authority to act in a way that will bind the Government. *Federal Crop Ins. Corp. v. Merrill,* 332 U.S. 380, 384–85, 68 S.Ct. 1, 3–4, 92 L.Ed. 10 (1947). *See also S.J. Amoroso Constr. Co. v. United States,* 12 F.3d 1072, 1075 (Fed.Cir.1993) (it is "Supreme Court law that the United States is neither bound nor estopped by its agents who act beyond their authority"). Indeed, Foley made no effort to inquire as to Cynthia's full name or even her position with the Corps—much less her authority to act. While Cynthia should not have offered advice where she was not authorized to do so, the risk that she was unauthorized, and more importantly, incorrect in her advice, falls upon the contractor.

■ In the contracting officer's final decision on Foley's request to reform the contract, reference is made to Cynthia Farmer, as an employee of the Corps who might have been the "Cynthia" to which Ms. Anderson spoke. Foley takes this as an admission that Cynthia Farmer is actually the Corps employee to whom Ms. Anderson spoke. Foley contends that Cynthia was therefore not just a random Corps employee who happened to answer the phone. Foley asserts that Cynthia appeared to be knowledgeable about the tax status of the project and did not indicate that she was without authority to answer the questions posed by Foley. However, Cynthia's apparent knowledge and failure to offer a disclaimer regarding her authority does not satisfy the need for actual authority. Any "contractor who enters into an arrangement with an agent of the government bears the risk that the agent is acting outside the bounds of his authority, even when the agent himself was unaware of the limitations on his authority." *CACI, Inc. v. Stone,* 990 F.2d

1233, 1236 (Fed.Cir.1993) (citing *Federal Crop Ins. Corp.,* 332 U.S. at 384, 68 S.Ct. at 3).

Moreover, the contractor is charged with reading the IFB, which unambiguously states that contract questions should be submitted in writing and that oral interpretations are not binding on the Corps. While Foley characterizes the relevant IFB language as "boilerplate," it is nevertheless a clear and unambiguous instruction to prospective bidders to make inquiries in a written form. This fact, coupled with the specific designation of other persons to answer questions, precludes any implication that Cynthia was authorized to answer questions. Any reliance to the contrary would, on its face, be unreasonable.

There is a reason this must be so. The purpose behind a requirement of a writing is to ensure that all prospective bidders have equal access to official interpretations regarding the contract, so that no bidder is unfairly given any advantage. Foley attempts to distinguish its claims here from such a policy by stating that the IFB clearly required the prospective bidders to determine, on their own and individually, the applicability of any state taxes to the project. Thus, the argument goes, Foley simply sought tax status information from the Corps, and not any official interpretation or amendment of the contract itself that would require written information to be disseminated to all prospective bidders. This argument is not persuasive.

Contrary to Foley's assertions, this case is a prime example of the rationale for requiring contractors with questions regarding the contract to obtain clarification in writing. The IFB requires each contractor to determine the applicable state taxes on its own prior to submitting its bid. Foley cannot rely on the Corps to answer legal questions for it through some unofficial channel of which other bidders may not be aware. The very fact that Foley received conflicting information from the two separate telephone inquires (depending on who happened to answer the phone) strongly supports such a policy of requiring written submissions and answers.

Foley counters that the Corps' position on the tax status of the project would not be an amendment to the IFB or the contract. However, if, under the clear language of the IFB, the initial burden to determine whether the project was tax exempt was on Foley, then this burden could only be shifted by modifying the IFB in a way that would be inconsistent with the plain language on which other bidders who did not telephone Cynthia would rely. Such a modification must be available to all prospective bidders, not just those who make telephone inquiries.

Foley cites several decisions that it claims support the theory that a mistake by both parties as to the tax status of a project constitutes grounds for reformation. Although these cases apply a somewhat different standard [5] for determining when a reformation for mutual mistake should be made, Foley offers them to show that such reformation has been made in prior cases with similar facts. In *Capital Temptrol Corp.*, ASBCA No. 27859, 84–2 BCA ¶ 17,332 (1984), the Armed Services Board of Contract Appeals found a mutual mistake of fact regarding the applicability of a state sales tax and required the Government to reimburse the contractor. However, in that case the Government's mistaken view was evidenced by its "Price Analyst," who was specifically charged with the authority to make determinations regarding the allowability of state sales taxes in a modification. *Id.* Moreover, a modification compensates the contractor for its actual expenses under the modification. There was no doubt in *Capital Temptrol* that the contractor was required to pay state taxes, which had been disallowed by the Government out of a mistaken belief—evidenced by its price analyst's determination—that the taxes would not be imposed by the state.

Next, Foley cites *In the Matter of Rust Eng'g Co.*, B–150071, 74–1 CPD ¶ 101 (1974), in which the Comptroller General found "no

question but that the parties" both entered the contract with a mistaken assumption that the project was exempt from state sales taxes. However, in that case the Government informed all bidders at a pre-bid conference that the project was exempt from state sales tax. The Government employee who expressed the Government's opinion on the tax issue attended the pre-bid conference specifically to answer questions about the project. Thus, the Government employee who made the misrepresentation was held out to the bidders as authorized to present the Government's position on the tax status of the project. Reliance by the contractor—and all other bidders who attended the pre-bid conference—in *Rust Eng'g* was therefore determined to be reasonable. Furthermore, it was the Government itself that sought the reformation, to allow it to reimburse the contractor for the taxes paid.

Finally, the plaintiff cites *Matter of Veterans Admin.–Washington State Sales and Use Tax*, B–215543, 85–2 CPD ¶ 361 (1985), an advisory opinion in which the Comptroller General allowed the Veterans Administration (VA) to reimburse contractors on a case-by-case basis in situations in which the VA and the contractors believed erroneously that state sales taxes would not be applicable to projects in the State of Washington. In that case, however, it was the VA which took the initial position that the contracts should be reformed. There was no question that the VA held the same erroneous view as the contractors. Here, Foley has the burden to show that the IFB was modified by the Corps prior to the bid.

■ Although the cases cited by Foley allowed reformation of a contract under somewhat similar factual circumstances, those cases did not apply the *Dairyland* standard, binding on this court, allowing reformation only when the contract does not place the risk of mistake upon the contractor.[6] In any event, none of the cases assist

---

5. Rather than the *Dairyland* test, the reviewing authorities in these cases applied a two part test, which basically asked: 1) whether there is clear and convincing evidence that the parties to the contract made a mutual mistake of fact; and 2) whether one party reasonably relied on the representations by the other party to its detriment.

The preclusive effect of contract language allocating risk to the contractor was therefore not discussed.

6. Neither the board decision nor the Comptroller General's opinions are binding precedent for this court. *See General Electric Co. v. United States,*

Foley unless Cynthia had some actual or implied actual authority to provide information regarding the taxability of the project in the Commonwealth of Kentucky. There is no such allegation in Foley's claim.

### Conclusion

Even if all the allegations in the complaint are true, Foley has not alleged facts from which the court could conclude that the parties entered into the contract subject to a mutual mistake of fact. The contract specifically places the burden of determining tax exempt status on the contractor. Cynthia's representations regarding the tax exempt status of the project did not bind the Corps to an assumption of the risk that the project was in fact taxable. The Government's motion to dismiss the plaintiff's complaint for failure to state a claim is granted. The Clerk is ordered to dismiss the complaint.

929 F.2d 679, 682 (Fed.Cir.1991); *National Forge Co. v. United States,* 779 F.2d 665, 668 (Fed.Cir.1985).