**Donald B. RICE, Secretary of the Air Force, Appellant,**

v.

**MARTIN MARIETTA CORPORATION, Appellee.**

93–1025.

United States Court of Appeals, Federal Circuit.

Dec. 28, 1993.

---

Steven L. Schooner, Trial Atty., Commercial Litigation Branch, Dept. of Justice, of Washington, DC, argued for appellant. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Asst. Director. Also on the brief were Bryan R. O'Boyle, Diana S. Dickenson, Dept. of the Air Force and John N. Ford and Paul C. Mitchell, Defense Contract Audit Agency, of counsel.

F. Barry Hennegan, Gen. Counsel, Martin Marietta Aero & Naval Systems, of Baltimore, Md, argued for appellee. With him on the brief was Maryanne R. Lavan, Asst. Gen. Counsel.

Before RICH, MICHEL and PLAGER, Circuit Judges.

MICHEL, Circuit Judge.

The Secretary of the Air Force (the government) appeals from the June 5, 1992 decision of the Armed Services Board of Contract Appeals (the ASBCA), No. 35895, pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 607(g)(1). The ASBCA concluded that Defense Acquisition Regulation (DAR) 15–203(c) (codified at 32 C.F.R. § 15.203(c) (1984))[1] and Cost Accounting Standard (CAS) 410 (codified at 4 C.F.R. § 410 (1984)) conflicted because DAR 15–203(c) required that general and administrative (G & A) expenses be allocated to individual costs in the G & A allocation base, whereas CAS 410 required that G & A expenses be allocated only to final cost objectives. Following the rationale of *United States v. Boeing Co.*, 802 F.2d 1390 (Fed.Cir.1986), the ASBCA declared that the DAR provision was unenforceable because the CAS governs in the event of a conflict between the DAR and

the CAS. Due to the unenforceability of DAR 15–203(c), the ASBCA declared that Martin Marietta was not subject to that provision and could recover the portion of G & A expense that DAR 15–203(c) attempted to disallow. Because we conclude that DAR 15–203(c) is an allowability, not an allocability provision, we see no conflict between the two regulations. We reverse to permit the government to disallow a portion of Martin Marietta's G & A expense.

## I. BACKGROUND

### A. The CAS

■ The CAS encompasses a series of accounting standards intended to achieve uniformity and consistency in measuring, assigning, and allocating costs to contracts with the federal government.[2] *See* Preamble to CAS 401, 37 Fed.Reg. 4139 (1972). The allocation of a cost deals with the accounting process of assigning costs to cost objectives.[3] A cost objective is a "function, organizational subdivision, contract or other work unit for which cost data are desired and for which provision is made to accumulate and measure the cost of processes, products, jobs, capitalized projects, etc." CAS 410.30(a)(4). For instance, a contract with the government can be a cost objective. For all or part of a cost to be allocated to a cost objective, the cost must have benefitted from or have been caused by the cost objective. In sum, allocation is an accounting process for accurately ascertaining contract costs.

■ The purpose of CAS 410 is to provide "criteria for the allocation of business unit general and administrative (G & A) expenses to business unit final cost objectives based on their beneficial or causal relationship." CAS 410.20. CAS 410.40(a), the provision at issue here, requires that "[b]usiness unit G & A expenses shall be grouped in a separate indirect cost pool which shall be allocated *only* to

---

1. This case involves Martin Marietta's accounting practices for the years 1980–1985.

2. Because the CAS applies government-wide, it presumably supersedes agency specific regulations such as the DAR to the extent those regulations are inconsistent with the CAS. *See Boeing*, 802 F.2d at 1395; *infra* n. 9.

3. The CAS defines "allocate" as "[t]o assign an item of cost or a group of items of cost, to one or more cost objectives. This term includes both direct assignment of cost and the reassignment of a share from an indirect cost pool." CAS 410.30(a)(1).

final cost objectives." (Emphasis added.) A G & A expense is any management, financial, or other expense incurred by a business for the general management and administration of the entire business. CAS 410.30(a)(6). G & A expenses include indirect, overhead expenses such as executive offices, executive compensations, legal and accounting services. A final cost objective is a "cost objective which has allocated to it both direct and indirect costs, and in the contractor's accumulation system, is one of the final accumulation points." CAS 410.30(a)(5). Martin Marietta's accounting system treats contracts as final cost objectives. Thus, in these circumstances, CAS 410 gives instructions for allocating indirect costs to contracts.

## B. The DAR

■ The DAR, while containing some allocation provisions, primarily encompasses regulations governing the allowability of costs, i.e., whether the government must reimburse the contractor for the incurred cost.[4] Procuring agencies retain sole authority to disallow various items of cost from total contract reimbursements. Boeing, 802 F.2d at 1394 ("[s]ince the allowability of a cost remains the province of the procuring agencies, the DOD may limit costs based upon rational procure-

ment policies"); CAS 405.20(b) (the CAS "does not govern the allowability of costs. This is a function of the appropriate procurement or reviewing authority.").

DAR 15–203(c), the provision at issue here, provides in pertinent part:[5]

> [A]ll items properly includable in an indirect cost base[6] should bear a pro-rata share of indirect costs irrespective of their acceptance as Government contract costs. For example, when a cost input base is used for the distribution of G & A, all items that would properly be part of the cost input base, whether allowable or unallowable, shall be included in the base and bear their pro-rata share of G & A costs.

The nature of the command in DAR 15–203(c) that "unallowable [costs] shall ... bear their pro-rata share of G & A costs" is central to the dispute in this case as to whether DAR 15–203(c) is an allocability or allowability provision. A clear understanding of that dispute first requires a clear understanding of the manner in which G & A expenses are allocated to final cost objectives.

A cost input base used for the distribution of the G & A expense pool must represent the total activity of the business organization

---

4. To be allowable a cost must: (1) be reasonable, (2) be allocable to government contracts, (3) meet all applicable CAS requirements, and (4) not be subject to the limitations or exclusions set forth elsewhere in the DAR or in the contract. DAR 15–301.2. In cost-reimbursement contracts, the government does not reimburse contractors for a broad range of unallowable costs, including, donations, entertainment costs and costs that exceed what would be incurred by a prudent person conducting a competitive business. DAR 15.205.

5. The portion of DAR 15–203(c) which directly precedes the passage at issue quoted in the text states:

> Each cost grouping shall be distributed to the appropriate cost objectives. This necessitates the selection of a distribution base common to all cost objectives to which the grouping is to be allocated. The base should be selected so as to permit allocation of the grouping on the basis of the benefits accruing to several cost objectives. This principle for selection is not to be applied so rigidly as to complicate unduly the allocation where substantially the same results are achieved through less precise methods. Once an appro-

priate base for distribution of indirect costs has been accepted, such base shall not be fragmented by the removal of individual elements.

This portion of DAR 15–203(c) is undisputedly an allocation provision requiring that both allowable and unallowable costs be allocated to the distribution base (the cost input base). This provision is consistent with CAS 405.40(e) and 410.-50(d) which place the same restrictions on the distribution base. For CAS-covered contracts, CAS provisions define the distribution base, although there is no conflict between the CAS and the DAR on the composition of the distribution base. DAR 15–203(d) ("The method of allocation of indirect costs ... shall be in accordance with Standards promulgated by the Cost Accounting Standards Board, if applicable to the contract.")

6. A base is used as a denominator in calculations allocating shares of a cost pool such as the G & A expense pool to various cost objectives. An indirect cost base can also be called an allocation base or a distribution base. CAS 410.40(b)(1) states that the G & A expense pool shall be allocated "by means of a cost input base" which is a type of distribution base. We use this term most frequently.

for the relevant accounting period. CAS 410.40(b). A total cost input base is generally an acceptable measure of the total activity. CAS 410.50(d). When a cost input base is used for the distribution of G & A expenses, the G & A is allocated to each final cost objective (in this case a contract) in an amount equal to the G & A allocation rate multiplied by the total of all direct costs allocable to each contract. The total of direct costs allocable to each contract includes both allowable and unallowable costs. CAS 405. The G & A allocation rate is determined by dividing the total G & A expense by the cost input base. Thus, the amount of G & A expense allocated to each contract held by a contractor can be calculated from the following two formulas:

    (1) Amount of G & A Allocated to Contract = G & A Allocation Rate × Total Direct Cost of Contract.

    (2) G & A Allocation Rate = Total G & A/Cost Input Base.

The portion of DAR 15–203(c) stating that unallowable costs shall "bear their pro-rata share of G & A costs" is interpreted by both the government and Martin Marietta to mean that a contractor should not be reimbursed for the whole amount of the G & A allocated to a contract in accordance with formulas (1) and (2) above. Rather, a share of the allocated G & A, proportionate to the unallowable costs associated with that contract will not be reimbursed. The parties' dispute centers on whether the method of denying reimbursement involves allocation or disallowance.

## C. Proceedings Below

In the proceedings below, a Principal Administrative Contracting Officer issued a final decision on August 6, 1987, stating that Martin Marietta's practice of excluding an unallowable direct cost, the tax gross-up expense,[7] from the cost input base for distribution of G & A expense for the years 1980–1985 violated CAS 405, 410, 418 and DAR 15–203(c).[8]

Martin Marietta appealed the decision of the contracting officer to the ASBCA, presenting two issues on appeal: (1) whether the exclusion of expressly unallowable costs from the cost input base for the allocation of G & A expense violated CAS 405, 410 or 418 and DAR 15–203(c); and (2) whether a pro-rata share of the G & A expense allocated to the contract, proportional to the unallowable costs, was also unallowable under DAR 15–203(c).

The ASBCA resolved the first issue in favor of the government, holding that Martin Marietta's exclusion of an unallowable expense, the tax gross-up expense, from the cost input base violated CAS 405, 410, and DAR 15–203(c). Martin Marietta does not appeal this decision.

The ASBCA resolved the second issue in favor of Martin Marietta by concluding that the unallowable tax gross-up expense should not bear a pro-rata share of G & A expense. The ASBCA based its conclusion on its holding that the pertinent part of DAR 15–203(c) is an allocability provision which conflicts with CAS 410, and in this situation, DAR provisions are unenforceable.[9] Because DAR 15–203(d) mandates that the allocation of indirect costs be governed by the CAS, the DAR itself supports rendering unenforceable a DAR requirement for allocating indirect costs which conflicts with a CAS requirement. DAR 15–203(d) ("[t]he method of allocation of indirect costs ... shall be in accordance with Standards promulgated by the

---

7. A "tax gross up expense" is a cost incurred by a contractor due to payments made to employees to offset their tax liability incurred after being reimbursed for relocation expenses. DAR 15–205.25(c)(4). The specific unallowable cost is irrelevant to the issue decided here, however.

8. The contract at issue incorporated the CAS and the DAR. Both parties agree that the contract was selected as a test case. Of course, the issues in this case of which costs should be reimbursed and to what extent, apply only to cost reimbursement contracts, not fixed price contracts.

9. The ASBCA cited *United States v. Boeing* to support rendering the DAR unenforceable due to the conflict with the CAS. In that case we explained that according to Department of Defense (DOD) policy, when the DOD incorporates both the CAS and the DAR into a contract, as it did here, and the DAR and CAS conflict with respect to allocability, the CAS supersedes the DAR. *Boeing*, 802 F.2d at 1395 (citing Armed Services Procurement Regulation Subcommittee 1975 Memorandum at 11). The parties do not dispute this outcome.

Cost Accounting Standards Board, if applicable to the contract.").

The issue as stated by the ASBCA was whether the disallowance of a cost should "carry with it a pro-rata share of G & A expense where the unallowed cost is in the allocation base." ASBCA slip op. at 28. According to the ASBCA, G & A expenses must be allocated to allowable and unallowable individual costs in the G & A allocation base (the cost input base) in order for those individual costs to "bear their pro-rata share of G & A costs" as required by DAR 15–203(c). The ASBCA concluded that this requirement conflicted with the CAS 410 requirement that G & A expenses be allocated only to final cost objectives. Thus, the ASBCA held that the issue governed by the relevant portion of DAR 15–203(c) was one of allocability, not allowability and, therefore, CAS 410 alone controlled. The result of this holding is that all of Martin Marietta's G & A expense allocated to the contract at issue will be reimbursed by the government because none of it can be properly disallowed pursuant to DAR 15–203(c).

The government appeals to this court, arguing that DAR 15–203(c) governs the allowability of G & A expenses and is consistent with CAS 410 which governs the allocability of those expenses. We have jurisdiction pursuant to 28 U.S.C. § 1295(b) (1988).

## II. STANDARD OF REVIEW

■ The CDA dictates the standard this court applies in reviewing decisions of agency contract appeals boards. 41 U.S.C. § 609(b) (1988). To the extent that the ASBCA determinations turned on its interpretation of DAR 15–203(c) and CAS 410, they present questions of law subject to independent review. *Ingalls Shipbuilding, Inc. v. O'Keefe,* 986 F.2d 486, 488 (Fed.Cir.1993).

## III. ANALYSIS

### A. The Conflict

■ The dispute in this case focuses on a short segment of language in DAR 15–203(c). That regulation requires that allowable and unallowable costs "bear their pro-rata share of the indirect costs." The government interprets this as meaning that a pro-rata share of G & A expense is disallowed after

the G & A expense has been allocated to a final cost objective. The ASBCA and Martin Marietta, however, contend that DAR 15–203(c) requires that G & A expenses be allocated to individual costs in the cost input base in violation of CAS 410.40(a). In resolving this controversy, we keep in mind the canon of statutory construction, equally applicable to regulations, that "where the text permits, statutes dealing with similar subjects should be interpreted harmoniously." *General Elec. Co. v. United States,* 929 F.2d 679, 681 (Fed.Cir.1991). We begin, therefore, with a preference for finding a reasonable interpretation of the regulations that does not create unnecessary conflict between them.

■ The development and operation of DAR 15–203(c) determine whether it is an allowability or allocability provision. *General Electric,* 929 F.2d at 682. DAR 15–203(c) and CAS 410 operate upon G & A expenses in separate and distinct ways. CAS 410 provides criteria for the measurement and allocability of costs to contracts. The pertinent segment of DAR 15–203(c) establishes the allowability of the costs thus measured and allocated.

This distinction is illustrated by the steps for computing the costs associated with a contract (a final cost objective). A summary of these steps will clarify how the allocability provisions work with the allowability provisions and put the following discussion in context. The steps for computing the total cost allocated to a contract are as follows: (1) allocate direct costs to the contract, including unallowable costs pursuant to CAS 405; (2) allocate indirect costs (including G & A) to the contract pursuant to CAS 410 and 418 and described above, in the Background section; and (3) add the direct and indirect costs. To compute the total *allowable* costs associated with a contract, the following additional steps are necessary: (4) determine the unallowable direct costs pursuant to procurement agency policies; (5) determine the unallowable G & A costs pursuant to DAR 15–203(c)—by multiplying the unallowable costs associated with that contract times the G & A allocation rate as explained below; and (6) disallow the unallowable direct and unallowa-

ble G & A costs by subtracting those costs from the total contract cost.

A review of what the allocation process entails and a comparison with the disallowance process demonstrate why DAR 15–203(c) is not an allocation provision. When a cost (or a share from a cost pool) is allocated, it is assigned to a cost objective. When all the costs assigned to a cost objective are totaled, a total cost or "price" for the cost objective can be ascertained. Each allocated, individual cost is a component of that final "price." CAS 410.40(a) requires that G & A expenses "shall be allocated only to final cost objectives." Accordingly, G & A can only be a proper component of the final cost objective, usually a contract. In steps two and three above the G & A expense is allocated to a final cost objective.

DAR 15–203(c), on the other hand, renders unallowable that share of G & A expense which is proportionate to the unallowable costs in the cost input base when it states that "all items that would properly be part of the cost input base, whether allowable or unallowable, shall be included in the base and bear their pro-rata share of G & A costs." [10] The unallowable cost and its pro-rata share of G & A expense are subtracted from the total contract price in accordance with steps five and six above. Through this subtraction, the pro-rata share of the G & A expense allocated to the contract is disallowed after the allocation steps. Disallowing a share of the G & A expense requires a subtraction step, but, contrary to the Board's explanation, it does not require that any G & A cost be reallocated to any individual, unallowable direct cost. The G & A expense is in no way assigned to the individual, unallowable direct costs and added with other components of that cost to reach a final "price."

Furthermore, the G & A expense is not "assigned" to the category of unallowable costs by DAR 15–203(c) even though the government's method of disallowing G & A creates a relationship between the G & A expense and the unallowable costs. Rather, the unallowable direct costs are used in a multiplication step to calculate a share of the G & A expense as indicated in step 5 above. But this relationship is not an allocation because the pro-rata share of G & A expense does not become a component of the unallowable direct costs. The disallowed G & A expense is a separate category from the unallowable direct costs as demonstrated by the fact that the government denies reimbursement of the two categories for two separate reasons. Unallowable costs are denied due to the nature of the individual costs. A portion of the allocated G & A expense is denied in an attempt to reimburse the contractor for only a fair amount of G & A expense. The amount of G & A expense that is reimbursed is only an approximation of the amount of G & A expense related to the allowable costs of each contract because G & A expenses are not directly caused by any one contract. Thus, to say that the unallowable costs "bear their pro-rata share of G & A costs" does not require that those G & A costs be allocated to the category of unallowable costs.

The fact that costs have been incurred, measured, and allocated in accordance with the CAS does not prohibit agencies from limiting the allowability of those costs under their own regulations. *Boeing,* 802 F.2d at 1394. Government agencies have the authority to disallow types and amounts of properly allocated costs for various policy reasons. Costs may be assignable and allocable under the CAS, but not allowable under the DAR. *Id.* at 1394; *General Electric,* 929 F.2d at 681. Our explanation in *Boeing* is instructive here:

> DOD has the legal authority to make all pension costs [an allocated cost] unallowable if it chooses to do so, to make the costs of specific types of pension plans unallowable, to put ceilings on the amount of costs which would be allowable, or to otherwise limit the allowability of pension costs. It also follows that, in order to effect an

10. When this segment of DAR 15–203(c) states that "all items that would properly be part of the cost input base, whether allowable or unallowable, shall be included in the base," it refers back to the first half of DAR 15–203(c) which operates as an allocability provision by requiring that allowable and unallowable costs be allocated to the cost input base. *See* n. 5. The combination of an allocability and an allowability instruction in the last sentence of DAR 15–203(c) makes the interpretation of this already complex regulation even more difficult.

allowability limitation on any cost measured by CAS, a measurement—such as some percentage of cost—is required. *Boeing,* 802 F.2d at 1394. Here, under DAR 15–203(c) the government is simply limiting the allowability of allocated G & A expenses by applying a percentage determined by the ratio of measured unallowable costs to the cost input base.[11]

In sum, we conclude that DAR 15–203(c) is an allowability provision. Therefore, there is no conflict between CAS 410 and DAR 15–203(c) and the government may limit reimbursement of G & A expenses.

### B. The ASBCA's Opinion

The ASBCA's determination that the DAR and the CAS are in conflict was incorrect. The ASBCA rejected the government's argument that disallowance occurs after allocation of the G & A expense to final cost objectives and so there is no conflict between the allocation demanded by CAS 410 and the disallowance demanded by DAR 15–203(c). The ASBCA stated:

> Under this argument the unallowable element in the base would retain its identity not only for establishment of a percentage for allocation of G & A but also through one or more transmutations into the contract final cost objectives which make up [Martin Marietta's] accounting system. The Government itself recognizes that this issue concerns the measurement of the tax gross-up cost [an unallowable cost] and that measurement is a matter of allocability.

ASBCA slip op. at 34. The ASBCA is saying that because the unallowable costs, which are a component of the cost input base, must be identified and measured as unallowable costs after the G & A allocation step, the process is a matter of allocability.

This rationale is incorrect. Although it is true that the calculation for disallowing G & A expense requires measurement of unallowable costs, that measurement does not require allocation of G & A expense. The calculation only requires totaling all costs directly allocated to the final cost objective

designated as unallowable. "[I]n order to effect an allowability limitation on any cost measured by CAS, a measurement—such as some percentage of cost—is required." *Boeing,* 802 F.2d at 1394. Thus, measuring unallowable costs and using that amount to calculate a share of disallowed G & A expense do not constitute an allocation of G & A expense (*see* steps 4 and 5 above).

To further explain its holding that DAR 15–203(c) requires allocation, the ASBCA stated:

> [T]he Government's theory [that G & A expense should be disallowed in proportion to unallowable costs] is premised on the erroneous theory that each and every cost element in the G & A allocation base generates its pro rata share of G & A expense.... Each element in a G & A allocation base does not generate a *pro rata* share of G & A expense.

ASBCA slip op. at 32. The ASBCA is correct that every element in the G & A allocation base (the cost input base), including the unallowable costs, does not necessarily generate a pro-rata share of G & A expense. This fact, however, has no bearing on whether DAR 15–203(c) is an allowability provision and, therefore, the implication of the ASBCA is also incorrect.

Allocation of G & A expense to final cost objectives is an approximation. A ratio is used to allocate the G & A expense pool over all of a contractor's various contracts because G & A expenses, by their very nature, cannot be attributed to any one contract. Through this allocation method the government is simply recognizing that G & A expenses are necessary for operating a business and, therefore, should be reimbursed, even though they are not directly attributable to any contract.

In a similar manner, when the government disallows a portion of the G & A expense after it has been allocated, the amount disallowed is again an approximation. The disallowance need not be based on a theory that every individual unallowable cost generated a pro-rata share of G & A expense. The gov-

---

11. Step 6 above calculates the unallowable G & A according to the formula—(G & A allocation rate) × (unallowable costs). Based on the defi-

nition of the G & A allocation rate, this formula can be rewritten—(total G & A) × (unallowable costs)/(cost input base).

ernment may make this approximation when deciding how much of the allocated G & A to disallow as a matter of procurement policy. *Boeing*, 802 F.2d at 1394 ("the DOD may limit costs based upon rational procurement policies...."). Moreover, as explained above, the disallowed G & A is not allocated to the unallowed costs—it is simply not reimbursed.

Thus, the explanations presented by the ASBCA do not support its conclusion that the relevant portion of DAR 15–203(c) is an allocability and not an allowability provision.

### C. History of CAS

Moreover, although the history of the CAS does not directly address the point, it tends to support our holding that DAR 15–203(c) is an allowability provision that does not conflict with CAS 410. This point was expressed by the two dissenting members of the ASBCA who relied on the position of the CAS Board when the Board promulgated CAS 405, entitled "Accounting for Unallowable Costs," in 1973. ASBCA slip op. at 37. CAS 405 Promulgation Comment 4 states that "ASPR[12] 15–203(c) ... has commonly been interpreted as meaning that the indirect costs shall assume the allowability status of the costs in the allocation base." 38 Fed. Reg. 24195 (1973). This language implies that whether G & A expense is disallowed in proportion to the unallowable costs was viewed by the CAS Board as a question of allowability rather than as a question of allocation. Moreover, we found no evidence in the CAS 410 Promulgation Comments that the CAS Board intended, when it promulgated CAS 410 in 1976, to change its previous understanding of DAR 15–203(c) as an allowability provision or the regulation's operation. 41 Fed.Reg. 16141 (1976).

### IV. CONCLUSION

Because DAR 15–203(c) operates to disallow a share of G & A expense proportionate to unallowable costs after the G & A expense has been allocated to a final cost objective, we conclude that DAR 15–203(c) is not an allocability provision in conflict with CAS 410. Accordingly, DAR 15–203(c) is valid

12. At that time the DAR was designated the Armed Services Procurement Regulations

and can be applied by a government procurement agency to limit reimbursement to a government contractor for G & A expenses. In this case, the ASBCA's erroneous interpretation of DAR 15–203(c) allowed Martin Marietta to recover all G & A expense allocated to the contract at issue. We reverse the ASBCA's interpretation to permit the government to disallow a portion of that allocated G & A expense.

*REVERSED.*