**KEARFOTT GUIDANCE & NAVIGATION CORPORATION,**
Appellant,

v.

**Donald H. RUMSFELD, Secretary of Defense, Appellee.**

**No. 02–1039.**

United States Court of Appeals, Federal Circuit.

Feb. 25, 2003.

---

Stephen D. Knight, Smith, Pachter, McWhorter & Allen, P.L.C., of Vienna, VA, argued for appellant. Of counsel on the brief was Samuel Paige, Paige & Paige, of Holliswood, Queens, NY.

Brian A. Mizoguchi, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Bryant G. Snee, Assistant Director. Of counsel on the brief were Thomas S. Tyler, Defense Contract Management Agency, of Bratenahl, OH; and Paul C. Mitchell, Office of Counsel DCAA, Department of Defense, of Ft. Belvoir, VA.

Gregory A. Smith, Piper Marbury Rudnick & Wolfe LLP, of Washington, DC, for amicus curiae DynCorp Information Sys-

tems, LLC. Of counsel on the brief was William J. Crowley.

Carter G. Phillips, Sidley Austin Brown & Wood LLP, of Washington, DC, for amicus curiae BAE Systems Information and Electronic Systems Integration, Inc. With him on the brief was Howard J. Stanislawski.

Before CLEVENGER, Circuit Judge, ARCHER, Senior Circuit Judge, and BRYSON, Circuit Judge.

BRYSON, Circuit Judge.

This appeal from the Armed Services Board of Contract Appeals involves a technical question as to the application of the 1990 version of a section of the Federal Acquisition Regulation ("FAR") to a government contract. The question is whether the contractor can base its claim for payment under the contract on a "stepped-up" valuation of its assets that was premised on use of the purchase method of accounting to value the assets of the corporation that emerged from a business combination. The Board held that the FAR provision in question prohibited the contractor from basing its claim for payment on the stepped-up valuation of its assets. In so doing, the Board rejected the contractor's arguments that (1) the government had impermissibly applied the 1990 FAR provision to a business combination that occurred prior to the effective date of the provision, and (2) the FAR provision conflicted with two provisions of the Cost Accounting Standards ("CAS") and therefore could not validly be applied as a ground for rejecting the payment claim. We agree with the Board's disposition of both issues, and we therefore affirm the Board's decision.

I

Prior to 1987, the Singer Company had various operating divisions, including the Kearfott Guidance & Navigation Division ("KGN Division"). The KGN Division was involved in the defense industry, and its assets included contracts with the Department of Defense. In December 1987, Singer converted the KGN Division into a wholly owned subsidiary, which it named Kearfott Guidance & Navigation Corporation ("Kearfott"). Singer transferred to the new subsidiary all of the assets and liabilities of its KGN Division, including its defense contracts.

In August 1988, Astronautics Corporation of America ("ACA") purchased all the issued and outstanding shares of Kearfott capital stock. ACA then incorporated a wholly owned subsidiary, KGN Sub, Inc., transferred all of its rights under the Kearfott purchase agreement to the new subsidiary, and then merged KGN Sub, Inc., into Kearfott. ACA retained an appraisal firm to determine the fair market value of Kearfott's assets; the ensuing review resulted in an increase in the valuation of those assets. Pursuant to the Kearfott purchase agreement, Singer and ACA elected to treat the transaction for federal income tax purposes as a purchase and constructive liquidation of assets.

Approximately 17 months later, the government promulgated a new FAR provision, FAR 31.205–52 (1990), which was entitled "Asset Valuations Resulting from Business Combinations." The new provision, which took effect on July 23, 1990, provided:

> When the purchase method of accounting for a business combination is used, allowable amortization, cost of money and depreciation shall be limited to the total of the amounts that would have been allowed had the combination not taken place.

55 Fed.Reg. 25,522 (1990).

In May 1992, the Navy awarded Contract No. N00030–92–C–0043 to Kearfott. Pursuant to the contract, Kearfott submit-

ted a progress payment request of $91,278 to the Navy on September 3, 1992. Of that amount, $15,763 was attributable to the increase in valuation, or "write-up," of Kearfott's assets that occurred following KGN Sub's purchase of Kearfott. The Navy refused to pay Kearfott the sum that was attributable to the asset write-up. Kearfott continued to include amounts associated with the asset write-up in its progress payment requests, and the Navy continued to exclude those amounts from payment as not allowable.

Kearfott ultimately filed an appeal with the Armed Services Board of Contract Appeals contesting the Navy's refusal to pay the portions of its claims that were attributable to the asset write-up. The government moved for summary judgment on the ground that FAR 31.205–52 barred Kearfott from recovering costs based on the write-up following the business combination. The Board, by a divided vote, granted the government's motion.

Relying on its decision in an earlier case involving the same issue, *Appeal of BAE Systems Information, Electronic Systems Integration, Inc.*, ASBCA No. 44832, 2001 WL 762392 (June 29, 2001), the Board ruled that the language of FAR 31.205–52 precluded Kearfott from using stepped-up asset values resulting from the business combination to determine allowable amortization, cost of money, and depreciation. The Board explained that under Accounting Principles Board Opinion No. 16 ("APB 16"), the purchase method of accounting is not limited to providing for the initial "step-up" in value, but also covers the post-acquisition reporting of the acquiring corporation's operations, and that the purchase method of accounting was therefore being "used" at the time the cost calculations were made as well as when the purchase occurred.

The Board further held that the 1990 version of FAR 31.205–52 was not imper-

missibly retroactive and that it was not invalid because of a conflict with CAS 404 and 409. On the latter issue, the Board held that the FAR provision did not conflict with CAS 404 and 409 because FAR 31.205–52 addressed the issue of allowability, while the CAS provisions addressed questions of allocability. One judge dissented from the Board's ruling on the ground that, in her view, FAR 31.205–52 conflicted with CAS 404 and therefore could not be applied to bar Kearfott's claims.

## II

■ The parties agree that the 1992 contract between Kearfott and the Navy incorporates FAR 31.205–52 and that it was appropriate to use the purchase method of accounting in determining the value of the assets Kearfott acquired in the business combination. The principal issue on appeal is therefore a narrow one: whether the Board of Contract Appeals erred when it construed FAR 31.205–52 (1990) to apply to a claim for payment that is based on an asset write-up from a business combination that took place prior to the FAR provision's effective date.

Kearfott first argues that the plain language of FAR 31.205–52 (1990) bars its application when the business combination in question took place before July 23, 1990, the effective date of the regulation. Kearfott's "plain meaning" argument is based on the fact that the regulation provides that the limitations on the allowable amortization, cost of money, and depreciation will apply "[w]hen the purchase method of accounting for a business combination *is used* . . . ." According to Kearfott, the use of the present tense ("is used"), rather than the past tense ("was used") or the present perfect tense ("has been used"), indicates that in order for the asset write-up that accompanies a business combina-

tion to be subject to the limitation set forth in the regulation, the business combination could not have occurred in the past, i.e., before the regulation took effect.

We disagree with Kearfott's interpretation of FAR 31.205–52. The language used in the regulation is temporally neutral, and there is no indication that it was meant to apply only to business combinations that occurred after July 23, 1990, a date not featured anywhere in the regulation. Moreover, the language of the regulation refers to "[w]hen the purchase method of accounting for a business combination is used," not "when a business combination occurs." That language suggests that the term "when" was used to mean "in the event that" rather than "at the time that." The regulation thus appears to treat the use of the purchase method of accounting as a circumstance or condition that must be satisfied in order to determine whether FAR 31.205–52 applies to the cost claim in question.

Significantly, the focus of the regulation is on the limitation imposed on the amount of allowable amortization, cost of money, and depreciation claimed at a particular time in connection with a particular government contract. The date that is critical for determining whether the regulation applies is the date on which the cost claim is submitted, not the date on which the circumstance or condition that triggers the application of the regulation arose. For that reason, the regulation is best understood as providing that if the amount claimed for any one of the three referenced cost elements is premised on a valuation of assets based on the purchase method of accounting for a business combination, the regulation bars the claim. That is, the term "is used," in reference to the purchase method of accounting, means that the regulation governs any claims based in part on a valuation that is the product of the purchase method of accounting.

The regulatory history of FAR 31.205–52 supports this interpretation. FAR 31.205–52 did not come as a surprise to the contracting community, but instead was promulgated as a formal articulation of what the chairman of the Commercial Cost Principles Committee referred to as "a long-standing tradition in government contracting ... that the government should be placed in no worse a position by a change in business ownership than it would have been had the change not taken place." Memorandum from J.W. Ermerins, Chairman, Commercial Cost Principles Committee, to the Director, DAR Council 20 (Feb. 4, 1987). Moreover, as the Board pointed out in *BAE,* during the period that the FAR provision was under consideration an objection was raised by a contractor's representative that the proposed language "overreaches because it would apply to business combinations consummated year[s] ago but which still affect the costs of contracts." The Cost Principles Committee rejected that objection and other similar comments on the ground that applying the new provision to pre-promulgation combinations would not be unfair and would, in fact, be consistent with the "no-write-up" rule that had been standard government policy for some time. As the Chairman of the Cost Principles Committee wrote in a memorandum responding to comments on the proposed regulation:

> The Committee is unaware of any special transition needs on this case. The rule should phase in just like any cost principle, appearing in all contracts executed after its effective date. The no-write-up rule has been enforced, by a jaw-boning process, on most large and celebrated business combinations throughout the decade of the 1980s. This case and its predecessor have been attempts to put the rule into the regula-

tions and have its applicability extend across the board. As the rule is just an "allowability" rule, we see no need for special transition rules.

Memorandum from Richard Brown, Chairman, Cost Principles Committee, to the Director, DAR Council 12 (July 1989).

In addition to its inconsistency with the text and the background of the regulation, Kearfott's proposed construction of FAR 31.205–52 would create an anomalous and cumbersome two-tiered system of cost accounting. Business combinations that occurred after the FAR's effective date would be subject to its limitations, while those that took place beforehand would be allowed to use the asset write-up no matter when the government contract was executed. It seems most unlikely that the Cost Principles Committee intended to develop such a system. Indeed, a regulation was proposed in 1987 that would have distinguished for some purposes between business combinations that occurred prior to promulgation and those that occurred afterwards, but the Defense Acquisition Regulation Council never adopted that measure. *See* Memorandum from J.W. Ermerins, Chairman, Commercial Cost Principles Committee, to the Director, DAR Council Tab A, Part 3 (Feb. 4, 1987).

We recognize that the Board relied on its interpretation of APB 16 and the meaning of "purchase method of accounting" in reaching its decision. As a result, both Kearfott and the government devote substantial portions of their briefs to arguing about the correctness of the Board's disposition of that issue. The meaning of APB 16 and "purchase method of accounting," however, is not critical to our interpretation of the FAR, and we do not find it necessary to address those questions. Even if, as Kearfott insists, APB 16 mandates that the purchase method as an accounting calculation be applied only at the time of the business combination, our hold-

ing that FAR 31.205–52 treats use of the purchase method as a circumstance or condition for its application still covers business combinations that took place prior to the FAR's effective date.

### III

Kearfott maintains that even if our interpretation of FAR 31.205–52 is correct, the regulation cannot apply to the business combination at issue because it (1) creates a retroactivity problem and (2) causes the FAR to conflict with CAS regulations, thus rendering it invalid. Neither argument is persuasive.

### A

■ Kearfott argues that applying FAR 31.205–52 (1990) to this contract gives the FAR provision an illegal retroactive effect because it disallows an asset write-up from a business combination that took place two years prior to the provision's effective date. However, a regulation does not operate retroactively simply because it takes into consideration conduct antedating the regulation's effective date. *See, e.g., Travenol Labs., Inc. v. United States,* 118 F.3d 749, 752–53 (Fed.Cir.1997) (examining the "interrelationship between the new law and past conduct" to discern retroactive effect). Rather, an impermissibly retroactive law is one that "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Landgraf v. USI Film Prods.,* 511 U.S. 244, 269, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Because Kearfott and the government executed the contract in 1992, the FAR did not affect any "vested rights" of Kearfott. *See Pasadena Hosp. Ass'n v. United States,* 618 F.2d 728, 735 (Ct.Cl. 1980) ("Plaintiff never had a right to be reim-

bursed . . . so we fail to see how it could be 'divested' of such a right"). Nor did the FAR impose any new obligation, duty, or disability with respect to a transaction previously entered into by Kearfott, because the relevant "transaction" is not the 1988 business combination but rather the 1992 defense contract. Because use of the purchase method of accounting for a business combination was a condition or circumstance necessary for application of FAR 31.205–52, the regulation affected only those government contracts executed after 1990 in which that condition had been satisfied.

Kearfott's rights vis-à-vis the government arose from its contract. At the time it entered into the contract, it agreed to be subject to the provisions of FAR 31.205–52. Although Kearfott did not know at that time how the legal claim it has raised in this case would ultimately be resolved, it recognized that the legal issue of the interpretation of the FAR provision was an open question, as the parties adverted to the issue in the contract and agreed to abide by the decision of a court or Board as to the allowability of the portion of its claim based on its "write-up" in asset valuation. Therefore, the application of FAR 31.205–52 to claims based on a pre-promulgation business combination was merely the product of a foreseeable exercise in contract interpretation; it was not the retroactive withdrawal of previously vested rights that Kearfott enjoyed in the contract or otherwise. The government's treatment of the 1988 business combination and the resultant use of the purchase method as background circumstances or conditions that triggered application of the regulation to the parties' 1992 contract therefore was not an act having an impermissibly retroactive effect.

### B

■ Finally, Kearfott contends that FAR 31.205–52 conflicts with CAS 404 and 409 and must be invalidated for that reason. Significantly, this argument, if accepted, would not only make FAR 31.205–52 inapplicable to pre-promulgation business combinations, but would lead to the invalidation of FAR 31.205–52 for all purposes for the period prior to 1995, when the CAS provisions were modified to comport explicitly with the FAR provision.

■ CAS 409 specifies that the depreciable cost of a tangible asset shall be its capitalized cost less its estimated residual value. 48 C.F.R. § 30.409–40(a)(1) (1990). CAS 404 establishes criteria for the capitalization of tangible assets and discusses the values that are to be assigned such assets under both the purchase method and the pooling of interests method of accounting, which is another means of asset valuation resulting from a business combination. *Id.* § 30.404–50 (1990). According to Kearfott, those provisions require use of the purchase method to write up costs because APB 16 requires use of the purchase method to establish the cost of the assets acquired in the business combination and CAS 404 and 409 require use of that asset cost as the capitalized value and to account for depreciation. By contrast, Kearfott argues, the FAR requires cost measurement using the seller's net book value. In other words, Kearfott maintains that the FAR provision is not operating as an allowability rule, which is within the domain of the cost provisions set forth in Part 31 of the Federal Acquisition Regulations, *Boeing N. Am., Inc. v. Roche*, 298 F.3d 1274, 1280 (Fed.Cir.2002), but rather as an allocability rule. When there is a conflict between FAR and CAS over allocability, the CAS regulation governs. *Rice v. Martin Marietta Corp.*, 13 F.3d 1563, 1565 n. 2 (Fed.Cir.1993); *United States v. Boeing Co.*, 802 F.2d 1390, 1395 (Fed.Cir.1986). In sum, the merit of Kearfott's argument thus depends on

whether we characterize FAR 31.205–52 as an allocability or an allowability provision; if the FAR is an allowability provision, then no conflict exists.

Kearfott analogizes this case to *United States v. Boeing Co.*, 802 F.2d 1390 (Fed. Cir.1986). In *Boeing*, the court found a conflict between CAS 412 and 413 and Defense Acquisition Regulation ("DAR") 15–205.6(f)(2)(ii)(B). CAS 412 and 413 require costs associated with unfunded retirement plans such as Boeing's Supplemental Executive Retirement Plan ("SERP") to be assigned in the year in which such costs are incurred and allocated to contracts for that year. On the other hand, the DAR provision required that the costs of unfunded pension plans be charged to government contracts only to the extent that they were deductible for the same cost accounting period for federal income tax purposes. In other words, the DAR provision only allowed the SERP costs that were paid on a cash basis to satisfy liabilities for prior years' service, while the CAS provisions required accounting for and allocating the SERP costs using an actuarial basis to assign to the current year a charge for the SERP costs deemed to arise in that same year. The court held that the DAR provision was in fact an allocability provision because it did not make "costs allowable or unallowable *per se* based upon a rational procurement policy entirely divorced from cost principles," but rather made "the allowability of a cost *contingent* upon use of a cost measurement, allocation and assignment technique which conflict with the requirements of CAS." *Boeing*, 802 F.2d at 1394. Therefore, because of the conflict with the CAS regulation, the court held the DAR invalid.

The government argues that this case is akin to *Rice v. Martin Marietta Corp.*, 13 F.3d 1563 (Fed.Cir.1993). The issue in *Martin Marietta* was whether DAR 15–203(c) conflicted with CAS 410 because

DAR 15–203(c) required that general and administrative ("G & A") expenses be allocated to individual costs in the G & A allocation base, while CAS 410 required that G & A expenses be allocated only to final cost objectives. In presenting its analysis, the court set forth a six-step process for distinguishing between allowability and allocability:

> The steps for computing the total cost allocated to a contract are as follows: (1) allocate direct costs to the contract, including unallowable costs pursuant to CAS 405; (2) allocate indirect costs (including G & A) to the contract pursuant to CAS 410 and 418 . . .; and (3) add the direct and indirect costs. To compute the total allowable costs associated with a contract, the following additional steps are necessary: (4) determine the unallowable direct costs pursuant to procurement agency policies; (5) determine the unallowable G & A costs . . . by multiplying the unallowable costs associated with that contract times the G & A allocation rates . . .; and (6) disallow the unallowable direct and unallowable G & A costs by subtracting those costs from the total contract costs.

*Martin Marietta*, 13 F.3d at 1568–69. The court went on to hold that DAR 15–203(c) was an allowability provision—and hence did not conflict with the CAS provisions at issue—because the DAR provision involved subtraction of disallowed G & A expenses from the total contract price in accordance with steps five and six above and therefore did not dictate how the costs themselves were allocated.

FAR 31.205–52 operates like the DAR provision at issue in *Martin Marietta*. Even where a stepped-up allocation is required by the purchase method of accounting, the government may still disallow the stepped-up basis as a matter of rational procurement policy. *See Boeing N. Am.,*

298 F.3d at 1280; *Martin Marietta,* 13 F.3d at 1569; *Boeing,* 802 F.2d at 1394. Nothing in FAR 31.205–52 precludes contractors from measuring and allocating their costs pursuant to the protocol set forth in the pertinent CAS provisions. The FAR provision therefore has no impact on the measurement and assignment of costs under CAS to a contractor's commercial contracts. Rather, the FAR provision merely operates as an after-the-fact ceiling on the extent to which certain costs will be allowed once they have been allocated among the acquired asset values under the CAS provisions. In other words, the use of the seller's net book value under FAR 31.205–52 is merely the result of the disallowance—the provision does not require a particular method of allocating costs. Because the FAR operates in this manner, it is an allowability provision that does not conflict with CAS regulations.

The difference between this case and the *Boeing* case on which Kearfott relies is that in *Boeing* the DAR provision that purported to be an allowability provision did not simply put a limit on the amount of the costs that the contractor would be allowed to charge to the government under the contract, but actually required that costs be allocated and assigned to certain periods, contrary to the allocation and assignment requirements of the CAS, in order for those costs to be allowed. Nothing in FAR 31.205–52 requires the allocation or assignment of costs to certain periods; the FAR provision simply disallows any costs that are based on asset valuations that are "written-up" based on a business combination.

■ To the extent the question presented in this case is more difficult than the question presented in *Martin Marietta,* it is relevant to note the canon of construction that there is a presumption in favor of finding harmony between two regulations dealing with similar subjects. *Martin Marietta,* 13 F.3d at 1568; *Gen. Elec. Co. v. United States,* 929 F.2d 679, 681 (Fed. Cir.1991). Application of this presumption is particularly appropriate in this case: The administrative history of FAR 31.205–52 shows that the Cost Principles Committee considered the possibility of a CAS–FAR conflict but dismissed that idea because it believed the proposed FAR functioned as an allowability rule. Kearfott has not rebutted the presumption against conflict.

IV

Because we interpret FAR 31.205–52 to treat use of the purchase method of accounting as a condition or circumstance necessary for its application, we conclude that the regulation disallows costs flowing from Kearfott's asset write-ups from the 1988 business combination. In addition, we do not believe that application of the FAR to the business combination creates a retroactivity problem, nor do we think that FAR 31.205–52 conflicts with CAS 404 or 409. For these reasons, we uphold the decision of the Armed Services Board of Contract Appeals.

*AFFIRMED.*