WEAVER, J.
(dissenting). I dissent from the majority’s affirmance of the judgment of the Court of Appeals. I would hold that the plaintiffs’ land is a hunting area as defined by the Michigan Department of Natural Resources and, as such, is subject to hunting regulations and restrictions prescribed by MCL 324.41901 et seq.
This case arises out of defendant city of Saginaw’s enactment of two ordinances prohibiting the discharge of firearms or bows and arrows within the city limits. The ordinances as enacted do not contain an exception for hunting activities. The Michigan Legislature has mandated that the Michigan Department of Natural Resources (DNR) shall have the exclusive power to “regulate and prohibit hunting, and the discharge of *361 firearms and bow and arrow” within the state.[1] A governing body of any political subdivision may request that the DNR close an area to hunting for safety or other concerns.[2] However, it is ultimately the DNR, not the local government, that regulates hunting, including the imposition of an absolute hunting prohibition.[3] When the state reserves exclusive jurisdiction to regulate a field, a municipal corporation cannot regulate the same field if the regulation results in a conflict between state regulations and local regulations.[4]
Contrary to the majority’s interpretation, the plain language of MCL 324.41901 et seq., hereafter referred to as part 419, of the Natural Resources and Environmental Protection Act (NREPA), provides the exclusive method by which the discharge of weapons may be prohibited in hunting areas, and explicitly authorizes the DNR to determine and define the boundaries of hunting areas in Michigan, to which part 419 applies. The majority’s holding that Mich Admin Code, R 299.3048 limits the application of part 419 exclusively to townships contravenes the plain language of part 419 and belies basic rules of interpretation governing administrative regulations. A local government must follow the procedure outlined in part 419 to obtain additional hunting restrictions.
A. MCL 234.41901 EXPLICITLY AUTHORIZES THE DNR TO DETERMINE AND DEFINE THE BOUNDARIES OF HUNTING AREAS IN MICHIGAN
Part 419, which concerns hunting-area control of the NREPA, provides a local governmental unit the only means of imposing additional hunting safety regula *362 tions beyond those originally prescribed by the DNR. The local governing body must ask the DNR to enact additional safety measures in an area if the governing body thinks that the “safety and well-being of persons or property are endangered by hunters or discharge of firearms or bow and arrows ....” MCL 324.41901(1). Part 419 vests the power to “regulate and prohibit hunting, and the discharge of firearms and bow and arrow” in the DNR. MCL 324.41901(1). In the event that a local governing body deems that the safety measures in place are inadequate to protect the general welfare, the local governing body can petition the DNR for a resolution closing additional lands to hunting.[5] The DNR must then hold a public hearing, conduct investigations, and submit its findings of facts and recommendations to the governing body of the local governmental unit.[6]
After receiving the DNR’s recommendations, the governing body can either accept the measures recommended by the DNR, or it can do nothing. If the governing body accepts the measures recommended by the DNR, it can incorporate the recommendations into a local ordinance that is identical to the DNR’s recommendations.[7] The DNR retains authority to unilaterally terminate closure of an area to hunting.[8] If the governing body chooses to reject the DNR’s recommendations, part 419 mandates that no further action be taken on the matter.[9]
Contrary to the majority’s interpretation, the plain language of part 419 explicitly authorizes the DNR to *363 determine and define the boundaries of hunting areas in Michigan. MCL 324.41901 provides:
(1) In addition to all of the department powers, in the interest of public safety and the general welfare, the department may regulate and prohibit hunting, and the discharge of firearms and bow and arrow, as provided in this part, on those areas established under this part where hunting or the discharge of firearms or bow and arrow may or is likely to kill, injure, or disturb persons who can reasonably be expected to be present in the areas or to destroy or damage buildings or personal property situated or customarily situated in the areas or will impair the general safety and welfare. In addition, the department may determine and define the boundaries of the areas. Areas or parts of areas may he closed throughout the year. The department, in furtherance of safety, may designate areas where hunting is permitted only hy prescribed methods and weapons that are not inconsistent with law. Whenever the governing body of any political subdivision determines that the safety and well-heing of persons or property are endangered by hunters or discharge of firearms or bow and arrows, by resolution it may request the department to recommend closure of the area as may be required to relieve the problem. Upon receipt of a certified resolution, the department shall establish a date for a public hearing in the political subdivision, and the requesting political authority shall arrange for suitable quarters for the hearing. The department shall receive testimony on the nature of the problems resulting from hunting activities and firearms use from all interested parties on the type, extent, and nature of the closure, regulations, or controls desired locally to remedy these problems.
(2) Upon completion of the public hearing, the department shall cause such investigations and studies to be made of the area as it considers appropriate and shall then make a statement of the facts of the situation as found at the hearing and as a result of its investigations. The department shall then prescribe regulations as are necessary to alleviate or correct the problems found. [Emphasis added.]
*364 The majority is correct that part 419 only governs hunting weapons regulation of “those areas established under this part.” However, plaintiffs’ land is subject to part 419 because plaintiffs’ land is a hunting area that the DNR regulates.
The DNR extensively and pervasively regulates hunting in the state of Michigan. In 1996 the people of Michigan, through legislative referendum, vested the DNR with the “exclusive authority to regulate the taking of game” in the state of Michigan.[10] In exercising its exclusive authority to regulate hunting, the DNR may, among other things, issue orders to “[establish lawful methods of taking game,” “[establish geographic areas within the state where certain regulations may apply to the taking of animals,” and “[r]egulate the hours during which animals may be taken.”* [11]
The orders promulgated by the DNR to regulate hunting are collectively known as the Wildlife Conservation Order (WCO).[12] Chapter XII of the order, titled “Management Areas Defined,” defines not only the areas in Michigan where hunting is allowed, but what type of animal can be hunted in which area. Saginaw County, in which plaintiffs’ land is located, is mentioned multiple times in the order. WCO 12.73, 12.73a, and 12.73b define the parts of Saginaw County that are subject to DNR regulations with respect to deer hunting —the areas covered include the city of Saginaw. WCO 12.635 defines all of Saginaw County as a hunting area with respect to spring wild turkey management. WCO 12.641 defines all of Saginaw County as a hunting area *365 with respect to turkey management. WCO 12.673 defines all of Saginaw County as a hunting area with respect to fall wild turkey management. WCO 12.700 and 12.701 define all of Saginaw County as a hunting area with respect to goose management. And the list continues.
Clearly, the DNR considers Saginaw County, and the city of Saginaw contained within the county, a hunting area to be managed, properly defined, and established by the DNR. Consequently, because plaintiffs’ land is designated as a hunting area by the DNR, any changes to DNR hunting regulations in the area must follow the procedure outlined in part 419. The DNR has the authority to regulate the discharge of weapons for hunting on plaintiffs’ property under part 419, and the city of Saginaw must follow the procedure outlined in part 419 to enact local ordinances that further restrict hunting.
B. LEGISLATIVE HISTORY AND ADMINISTRATIVE RULES APPLIED TO PART 419
Given that the DNR has the explicit statutory authority to establish and define hunting areas under part 419, including regulating hunting on plaintiffs’ land, it is now necessary to consider the effect of administrative rules already enacted for the administration of the regulatory provisions of part 419. An administrative agency cannot go beyond the bounds of the statutory authority granted by the Legislature.[13]
MCL 317.332, enacted by 1967 PA 159, was the predecessor statute to MCL 324.41901 (part 419). MCL *366 317.332 was repealed in 1995 by 1995 PA 57, which enacted 324.41901. MCL 317.332 provided:
(1) In the interest of public safety and the general welfare, the committee is empowered to regulate and prohibit hunting, and the discharge of firearms and bow and arrow, as herein provided, on those areas established under the provisions of this act where hunting or the discharge of firearms or bow and arrow may or is likely to kill, injure, or disturb persons who can reasonably be expected to be present in such areas or to destroy or damage buildings or personal property situated or customarily situated in the such areas or will impair the general safety and welfare; and the committee is empowered to determine and define the boundaries of such areas. Areas may be closed throughout the year or parts thereof. The committee, in furtherance of safety, may designate areas where hunting is permitted only by prescribed methods and weapons that are not inconsistent with law. Whenever the governing body of any political subdivision determines that the safety and well-being of persons or property are endangered by hunters or discharge of firearms or bow and arrows, by resolution it may request the committee to recommend such area closure as may be required to relieve the problem. Upon receipt of a certified resolution, the committee shall establish a date for a public hearing in the political subdivision, and the requesting political authority shall arrange for suitable quarters for the hearing. The committee shall receive testimony on the nature of the problems resulting from hunting activities and firearms use from all interested parties on the type, extent, and nature of the closure, regulations, or controls desired locally to remedy these problems.
(2) Upon completion of the public hearing, the committee shall cause such investigations and studies to be made of the area as it deems appropriate and shall then make a statement of the facts of the situation as found at the hearing and as a result of its investigations. The committee shall then prescribe such regulations as are necessary to alleviate or correct the problems found.
*367 Although MCL 324.41901 and MCL 317.332 are almost identical, there are several substantive differences between the two. The first distinction is the addition of the phrase “[i]n addition to all of the department powers” to the beginning of subsection 1 of MCL 324.41901. The second distinction is the addition of the phrase “[i]n addition, the department may determine and define the boundaries of the areas” to the middle of subsection 1 of MCL 324.41901. The third distinction is changing “the committee” to “the department.”
MCL 317.331, also repealed by 1995 PA 57, defined “the committee” for purposes of MCL 317.332. MCL 317.331 provided:
(1) A hunting area control committee, composed of a representative of the department of conservation, a representative of the department of state police, the township supervisor, or if he declines to serve, a representative selected by the township board, and a representative of the sheriffs department of the respective counties involved is established and shall perform such duties as are authorized by this act.
(2) The representatives of the state agencies shall be selected from the staff of each agency by its chief authority and designated as that agency’s representative. The committee shall select 1 of its members as chairman and the chairmanship shall be alternated between the agencies each year. The department of conservation shall perform clerical, operational, and administrative duties of the committee in accordance with rules, regulations, procedures and policies promulgated and adopted by the committee and the department of conservation as the agency within which the committee operates. Expenses incurred by individual members in carrying out the intent and purpose of this act shall be borne by the member’s department. Costs of surveys and actions requiring services outside the committee and the sheriffs department shall be borne by the department of conservation. [Emphasis added.]
*368 Part 419 does not have a section corresponding to MCL 317.331, the only section in the previous statute that explicitly referenced townships. As a result, the existing statutory scheme does not impliedly or explicitly restrict the application of part 419 to townships. Rather, part 419 applies to “the governing body of any political subdivision,” as explicitly stated in MCL 324.41901.
The majority argues that Rule 299.3048 restricts the application of part 419 exclusively to townships, not cities. Rule 299.3048 provides:
Rule 299.3048 Hunter area control committee.
Rule 48. (1) The hunter area control committee was created by section 1 of Act No. 159 of the Public Acts of 1967. It is composed of a representative of the department of natural resources, a representative of the department of state police, the township supervisor, and a representative of the sheriffs department of the counties involved.
(2) The committee selects a chairman from its members who serves for a year, then alternates with a member from another agency. The department of natural resources performs clerical, operational, and administrative duties of the committee. Expenses incurred are borne by the member’s department. Costs of surveys and actions outside the committee and the sheriffs department are borne by the department of natural resources.
(3) In the interest of public safety and the general welfare, the committee may regulate and prohibit hunting and the discharge of firearms and bow and arrow on those areas where hunting or the discharge of firearms or bow and arrow may or is likely to kill, injure, or disturb persons who reasonably can be expected to be present in the areas or to destroy or damage buildings or personal property situated or customarily situated in such areas or will impair the general safety and welfare. The committee may determine and define the boundaries. Areas may be closed throughout the year or parts thereof. The committee, in furtherance of safety, may designate areas where hunting is *369 permitted only by prescribed methods and weapons not inconsistent with law.
The majority argues that under the plain language of Rule 299.3048, the DNR has elected to administer part 419 through the “committee,” including the duty to designate hunting areas.
There are several flaws with such an interpretation. First this interpretation of the effect of Rule 299.3048 does not consider the extensive and detailed regulations promulgated by the DNR covering the what, when, where, and how of hunting in Michigan.[14] Further, asserting that Rule 299.3048 allows a “committee” to restrict DNR hunting regulation to townships ignores the express mandate in MCL 324.41901 that “the department may determine and define the boundaries of the areas” to be hunted upon, not a committee. This phrase was added to the statute during the 1995 amendment, and it signifies the Legislature’s intent to empower the DNR, as opposed to the committee, to make all decisions regarding the regulation of hunting. To interpret Rule 299.3048 to vest complete authority to designate hunting areas in a “committee” ignores the vast body of regulations that the DNR has promulgated to designate and define hunting areas, long after Rule 299.3048 was enacted. Such a reading would be contrary to the intent of the Legislature and a plain reading of part 419. Because the DNR has continued to define and designate hunting areas in Michigan, it is inconsistent to conclude that the DNR has elected to vest the power to designate and define hunting areas in a “committee.”
The majority supports the applicability of Rule 299.3048 to the current statutory scheme by citing MCL 324.105 and MCL 324.41902(3). MCL 324.105 states:
*370 When the department or other agency is directed to promulgate rules by this act and rules exist on the date the requirement to promulgate rules takes effect, which rules the department or agency believes adequately cover the matter, the department or agency may determine that new rules are not required or may delay the promulgation of new rules until the department or agency considers it advisable. [Emphasis added.]
MCL 324.41902(3) provides that “all rules” promulgated before 1986 are still in effect “unless rescinded pursuant to the administrative procedures act.” Although Rule 299.3048 has never been rescinded, the majority’s interpretation that Rule 299.3048 restricts DNR hunting-area control to “townships” and that the “committee” controls hunting-area designations belies basic concepts governing the applicability of administrative rules.
While an administrative agency may make such rules and regulations as are necessary for the efficient exercise of its powers expressly granted by the Legislature, the administrative agency cannot exceed or restrict the statutory authority granted by the Legislature.[15] Rule 299.3048, therefore, is effective only to the extent that it does not exceed or restrict the statutory mandates in part 419. MCL 324.41902(3) keeps Rule 299.3048 effective today, and MCL 324.105 mandates that Rule 299.3048 be read to “adequately cover the matter” discussed in part 419. Neither MCL 324.105 nor MCL 324.41902(3) authorizes the DNR to restrict hunting regulations to townships. Furthermore, part 419 expressly states that DNR authority applies to the governing body of any political subdivision, not just to townships. If Rule 299.3048 is read to mean that the DNR is restricting its control over hunting regulations *371 to townships, the rule would be narrowing the DNR’s authority to designate, define, and control hunting areas, as granted by part 419. Such an interpretation allows an impermissible abridgment of the authority that the Legislature granted to the DNR.
Rule 299.3048 (adopted in 1975) is an administrative rule purportedly implementing part 419, and the Wildlife Conservation Order (adopted in 1995, and last revised on April 17, 2007) is a set of regulations promulgated by the DNR that also administers the provisions of part 419. To read Rule 299.3048 to apply only to townships contravenes principles of administrative law dealing with the interpretation of coexisting administrative regulations. There is a presumption in favor of finding harmony between two administrative regulations dealing with similar subjects.[16] Between two incompatible agency statements, the later one controls over the earlier one.[17] Rule 299.3048 must be read in conjunction with the Wildlife Conservation Order, and when there is a direct conflict between Rule 299.3048 and the Wildlife Conservation Order, the Wildlife Conservation Order should govern because it was adopted after Rule 299.3048. The “committee” created in Rule 299.3048 cannot control hunting-area designations because the Wildlife Conservation Order describes in minute detail hunting areas in Michigan, and the order governs if there is a direct conflict between two regulations. Likewise, Rule 299.3048 cannot limit the application of part 419 to townships because the Wildlife Conservation Order explicitly describes hunting in all of Michigan, and contains no limitation to townships only.
*372 The majority’s interpretation that Rule 299.3048 limits the application of part 419 to townships and vests the authority to designate and control hunting areas in a committee contravenes the plain language of part 419 and belies basic rules of interpretation governing administrative regulations. As a result, I remain convinced that the DNR has the exclusive authority to regulate hunting in Michigan, including the discharge of firearms and bows and arrows for hunting purposes.
CONCLUSION
The DNR has the exclusive authority to regulate hunting in Michigan, including the discharge of firearms and bows and arrows for hunting purposes. Contrary to the majority’s interpretation, the plain language of part 419 explicitly authorizes the DNR to determine and define the boundaries of hunting areas in Michigan. As a result, local governments must follow the procedure outlined in part 419 to adopt additional hunting regulations. The majority’s interpretation that Rule 299.3048 limits the application of part 419 to townships and vests the authority to designate and control hunting areas in a committee contravenes the plain language of part 419 and belies basic rules of interpretation governing administrative regulations.
KELLY, J., concurred with WEAVER, J.

 MCL 324.41901(1); see MCL 324.40113a.

 MCL 324.41901(1).

 MCL 324.41901(1) and (2).

 People v Llewellyn, 401 Mich 314, 322 n 4; 257 NW2d 902 (1977).

 MCL 324.41901.

 Id.

 MCL 324.41902(1).

 MCL 324.41903.

 MCL 324.41902(1).

 MCL 324.40113a(2), found in part 401 of the NREPA, which concerns wildlife conservation.

 MCL 324.40107(1)(e), (h), and (k).

 The Wildlife Conservation Order can be found at <http://www.michigan.gov/documents/Wcao_134367_7.html> (accessed May 2, 2007).

 York v Detroit (After Remand), 438 Mich 744; 475 NW2d 346 (1991); Coffman v State Bd of Examiners in Optometry, 331 Mich 582; 50 NW2d 322 (1951).

 See the Wildlife Conservation Order, supra.

 York, supra; Coffman, supra.

 Kearfott Guidance & Navigation Corp v Rumsfeld, 320 F3d 1369, 1377 (CA Fed, 2003).

 Timken Co v United States, 166 F Supp 2d 608, 619 (Ct of Int’l Trade, 2001).